ST. JOSEPH TOWNSHIP *v.* CITY OF ST. JOSEPH.

1. QUO WARRANTO—ELECTIONS—ANNEXATION—PROSECUTING ATTORNEY—MANDAMUS.

Leave to file a township's petition to set aside an annexation election was properly granted by circuit court, where statute limits period within which to file such petition to 30 days, the cumbersome and circuitous course of requiring mandamus proceedings against the prosecuting attorney who had refused to do so to file such petition being obviously inadequate (CL 1948, §§ 638.28–638.30).

2. SAME—JURY.

A court is without power to deprive parties of their right to trial by jury of disputed factual issues in a quo warranto proceeding (CL 1948, §§ 638.28–638.30).

3. SAME—ELECTIONS—FRAUD—PLEADING—EVIDENCE.

Quo warranto plaintiff claiming election was illegal because of fraud must allege and adduce sufficient proof to support a fact finding that enough votes were tainted by the alleged fraud to affect the outcome (CL 1948, §§ 638.28–638.30).

4. ELECTIONS—ANNEXATION—FRAUD—EVIDENCE.

Evidence that sufficient property owners had been offered sums for their property involved in an annexation proceeding substantially in excess of their market values, such offers being expressly contingent upon the success of the annexation elec-

---

* Continued from Volume 372 Michigan.

REFERENCES FOR POINTS IN HEADNOTES

[1] 44 Am Jur, Quo Warranto § 27.
[2] 44 Am Jur, Quo Warranto § 111.
[3] 18 Am Jur, Elections § 305.
  44 Am Jur, Quo Warranto § 87 *et seq.*
[4] 18 Am Jur, Elections § 305.
  44 Am Jur, Quo Warranto § 109.
[5] 18 Am Jur, Elections § 330.

tion *held*, sufficient to justify jury's inference that such property owners had been promised a valuable consideration in
exchange for their favorable vote on annexation and to warrant
trial court's instruction that such conduct would constitute
material fraud in the context of the case (CLS 1956, § 168.931;
CL 1948, §§ 638.28–638.30).

5. SAME—ANNEXATION—ELECTION—FRAUD.

   An offer of a sum substantially in excess of the market value of
   property, made in exchange for a favorable vote in an election
   annexing such property to city from which the offer emanated,
   constitutes a misdemeanor and vitiates the election results accomplished by it (CLS 1956, § 168.931).

Appeal from Berrien; Anderson, Jr. (David), J.
Submitted February 7, 1964. (Calendar No. 61,
Docket No. 50,102.) Decided May 4, 1964. Rehearing denied June 4, 1964.

Quo warranto by St. Joseph Township and Orval
L. Benson, its supervisor, against City of St. Joseph,
a municipal corporation, to invalidate annexation
election. Verdict and judgment for plaintiffs. Defendant appeals. Affirmed.

*Hartwig & Crow* (*John L. Crow*, of counsel), for
plaintiffs.

*A. G. Preston, Jr.*, for defendant.

SOURIS, J. Plaintiffs began the present proceeding
to challenge the validity of an annexation election[1]
which resulted in the detachment of certain properties from plaintiff township and their annexation to
defendant city. Plaintiffs first petitioned the circuit
court for leave to file an information in the nature

---

[1] In *St. Joseph Township* v. *Berrien County Supervisors*, 363 Mich
295, plaintiff township attempted unsuccessfully to forestall the election. The chancellor dismissed plaintiff's bill prior to the election
because of the existence of an adequate remedy at law. This Court
affirmed the chancellor's action and denied plaintiff any other relief
in that proceeding, noting that the instant action had already been
initiated.

of quo warranto, pursuant to CL 1948, §§ 638.28–638.30 (Stat Ann §§ 27.2342–27.2344),[2] alleging in their petition material fraud in the election and the prosecuting attorney's refusal to institute quo warranto proceedings. After grant of leave plaintiffs filed an information alleging that only 6 electors resided in the territory annexed, that an agent of defendant had contracted with 4 of these electors to purchase their property, conditioned upon its being annexed to defendant, and that such purchase contracts were made to influence the electors' votes on the annexation proposal.

At trial plaintiffs offered proofs that prior to the annexation election one Phelps had entered into separate purchase agreements with Charles Zimmerle, Sr., and his wife and with Reinhold Rode and his wife, wherein Phelps agreed to purchase their properties upon the condition that:

"Seller shall immediately petition for annexation to the city of St. Joseph of the property covered by this purchase agreement together with certain other parcels of land necessary to make this property contiguous to the present boundaries of the city of St. Joseph. Purchasers shall not be required to

---

2 "Sec. 28. A petition may be filed in the circuit court of any county of this State whenever it shall be made to appear that material fraud or error has been committed at any election in such county at which there shall have been submitted any constitutional amendment, question, or proposition to the electors of the State or any county, township or municipality thereof.

"Sec. 29. Such petition shall be filed within 30 days after such election by the attorney general or the prosecuting attorney of the proper county on his own relation, or on the relation of any citizen of said county without leave of the court, or by any citizen of the county by special leave of the court or a judge thereof. Such petition shall be filed against the municipality wherein such fraud or error is alleged to have been committed.

"Sec. 30. After the filing of such petition the procedure shall conform as near as may be to that provided by law for informations in the nature of quo warranto."

Currently, see CLS 1961, § 600.4545 (Stat Ann 1962 Rev § 27A-.4545).

complete this transaction unless and until the property shall have been annexed to the city of St. Joseph, Michigan."

After entering each such agreement Phelps assigned his rights thereunder to the St. Joseph Housing Corporation.[3] Although no formal ties exist between the corporation and the city, the city manager is the corporation's vice president and the city attorney served as the corporation's attorney in the transactions relating to the acquisition of the Zimmerle and Rode properties.

Plaintiffs also offered evidence that the market values of the Zimmerle and Rode properties were $5,000 and $15,000 respectively; that the corporation had contracted to buy them for $17,500 and $35,000 respectively, conditioned upon success of the annexation election; that Zimmerle's son, who with his wife constituted the other 2 electors, told the city manager on the day of the election that he favored the sale and annexation because his parents needed the money; that 3 days prior to the election the city manager visited Zimmerle and showed him a $17,500 check, observing that it would be his if the annexation proposal were adopted; that the corporation had no appraisal made of the properties, the agreed price for which was greater than the liquid assets of the corporation. It is of more than passing significance that, according to the map attached to the annexation petition, nearly 1/2 of the territory proposed to be annexed consisted of industrial property. The inclusion of that property in the annexation proposal, contrary to defendant's allegations, was not necessary to make the other proper-

---

[3] The election took place on September 12, 1960. The Zimmerle agreement was dated November 25, 1959, and on the same date Phelps agreed to sell his interest in the property to the housing commission, contingent upon annexation. The Rode agreement was dated March 2, 1960, and Phelps' assignment thereof to the housing commission was dated March 4, 1960.

ties annexed contiguous to the city. It was necessary to include the Zimmerle and Rode properties, on the other hand, in order to make the industrial properties contiguous to the city.

Upon trial a jury verdict was rendered in plaintiffs' favor, and defendant appeals from the resulting order setting aside the election and declaring it void.

Defendant first argues that the trial court erred in denying its motion to set aside the order granting plaintiffs leave to file their information. Defendant cites *Marian* v. *Beard,* 259 Mich 183, for the proposition that plaintiffs' proper remedy, after the prosecutor's refusal to institute proceedings, was to seek a writ of mandamus to compel the prosecutor to act. *Marian,* however, involved an attempt to oust an official from his office, and the proceedings were had under CL 1929, § 15297 (at the time of institution of these proceedings, CL 1948, § 638.27 [Stat Ann § 27.2341]).[4] That statute differs from the statutory provisions[5] under which plaintiffs acted in the instant case in that the latter limit the period in which a petition may be filed to 30 days after the election. In view of such limitation, the cumbersome and circuitous course of requiring mandamus proceedings against the prosecutor is obviously inappropriate.[6]

Defendant next argues that the court erred in permitting, on plaintiffs' demand, jury trial over its objections. This was not error since, indeed, the

[4] "Sec. 27. Informations under this chapter may be filed by the prosecuting attorney of the proper county, on his own relation, or that of any citizen of the county, without leave of the court, or, by any citizen of the county by special leave of the court or a judge thereof."

[5] *Supra,* note 2.

[6] Under the Revised Judicature Act, even actions to oust an official may be brought directly by a private party if the attorney general refuses to act. See CLS 1961, § 600.4501 (Stat Ann 1962 Rev § 27A.4501), and the comment at 2 Report of Joint Committee on Michigan Procedural Revision 265.

court is without power to deprive parties of their right to trial by jury of disputed factual issues in a quo warranto proceeding. *People, ex rel. White,* v. *Doesburg,* 16 Mich 133.

Defendant argues that the court erred by denying its motions for directed verdict at the conclusion of plaintiffs' case and at conclusion of the entire proofs, and that the jury's verdict was against the great weight of the evidence. Under the applicable statute, plaintiffs had to establish the commission of "material fraud or error" at the election.[7] "Material fraud" means fraud which might have affected the outcome of the election. While it is not necessary that plaintiff establish with certainty that but for the alleged fraud the election outcome would have been different, his proofs must be sufficient to support a fact finding that enough votes were tainted by the alleged fraud to affect the outcome.[8]

In this case of St. Joseph, 6 ballots were cast: 4 favoring annexation, 1 opposing, and 1 spoiled. At least 4 of the voters had received a direct pecuniary inducement to favor annexation; assuming that of 2 of these, 1 opposed annexation and 1 spoiled his ballot, there yet remain 2 votes which, if changed, would have altered the outcome of the election.

The question then is, whether plaintiffs produced proofs from which a fact finder might conclude that material fraud affected the outcome of the election. We hold that they did. Here, even at the close of plaintiffs' proofs, there was direct evidence that the Zimmerles and Rodes were offered sums for their property, substantially in excess of their market values, such offers being expressly contingent upon the success of the annexation election. The jury

7 *Supra,* note 2.
8 See, *e.g., Attorney General, ex rel. Harwood,* v. *Stillson,* 108 Mich 419, 423, 424; *St. Joseph Township* v. *Municipal Finance Commission,* 351 Mich 524, 531.

could reasonably infer from these facts alone that the Zimmerles and Rodes had been promised a valuable consideration in exchange for their favorable vote on annexation. Such conduct constitutes a misdemeanor in this State,[9] and we hold that it likewise vitiates the election results accomplished by it. The trial court did not err in denying defendant's aforementioned motions, nor did the trial court err in instructing the jury that such conduct would constitute material fraud in the context of this case.

Affirmed. Plaintiffs may tax their costs.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SMITH, O'HARA, and ADAMS, JJ., concurred.

---

[9] CLS 1956, § 168.931 (Stat Ann 1956 Rev § 6.1931):

"Sec. 931. Any person who violates any of the following statutory provisions shall, on conviction, be deemed guilty of a misdemeanor:

"(a) No person shall, either directly or indirectly, give, lend or promise any money or valuable consideration to or for any person as an inducement to influence the manner of voting by any person relative to any candidate or proposition or as a reward for his refraining from voting. The term 'valuable consideration' as used in this section shall be construed to include any money, gift, fee, loan, office, position, appointment or employment."

See *Attorney General, ex rel. Seavitt,* v. *McQuade,* 94 Mich 439, 442, where, in a case alleging the fraudulent election of an official, the Court noted that the importance of election provisions was indicated by the imposition of criminal liability for their violation.