BARROW v DETROIT MAYOR

Docket No. 298128. Submitted November 2, 2010, at Detroit. Decided
     November 9, 2010, at 9:10 a.m.

> Tommy Joe Barrow sought leave in the Wayne Circuit Court to file a
> complaint for quo warranto under MCL 600.4505 against the
> mayor of Detroit, the city of Detroit, elections officials of Detroit
> and Wayne County, and others after he lost the 2009 Detroit
> mayoral election. He alleged that there was a likelihood that he
> was in fact elected and that the mayor had usurped the office as a
> result of ballot tampering. The Wayne County Board of Canvassers
> granted Barrow a recount, which confirmed the results of the
> election, but when he requested the county prosecutor and the
> Attorney General to initiate quo warranto proceedings, each
> declined. The Secretary of State conducted an inquiry in response
> to a letter Barrow sent to that office, but concluded that no
> fraudulent vote manipulation had occurred. After a hearing on the
> Barrow's application for leave to file a quo warranto action, the
> court, Isidore B. Torres, J., denied Barrow's application, conclud-
> ing that Barrow had failed to provide sufficient factual support for
> his allegations that election irregularities resulted in the mayor
> usurping his office and thus that the application lacked sufficient
> apparent merit to justify further inquiry by quo warranto. Barrow
> appealed.
>
>      The Court of Appeals held:
>
>      The trial court did not abuse its discretion by denying leave to
> file the action. Under MCR 3.306(B)(3)(a) and MCL 600.4501, a
> person may apply to the Attorney General to bring an action for
> quo warranto alleging a usurpation of office. If the Attorney
> General refuses the request, the person may apply privately to the
> court under MCR 3.306(B)(3)(b) for leave to file the action. An
> application for leave to file an action for quo warranto must make
> a precise and positive showing of a clear case of right and that
> public policy will be served by the proceeding. The application
> must disclose sufficient facts and grounds and sufficient apparent
> merit to justify further inquiry by quo warranto proceedings.
> Leave should not be granted if the applicant swears to a conclusion
> only. The only specific facts Barrow alleged in his application were

the number of ballots deemed uncountable, the number of votes in the original election, and the number of votes it would take to change the outcome. The other allegations were beliefs, suspicions, and conclusions without specific factual support.

Affirmed.

QUO WARRANTO — APPLICATION FOR LEAVE TO FILE ACTION — SUFFICIENCY OF PLEADINGS.

A person may apply to the Attorney General to bring an action for quo warranto alleging a usurpation of office; if the Attorney General refuses the request, the person may apply privately to the court for leave to file the action; an application for leave to file an action for quo warranto must make a precise and positive showing of a clear case of right and that public policy will be served by the proceeding; the application must disclose sufficient facts and grounds and sufficient apparent merit to justify further inquiry by quo warranto proceedings; leave should not be granted if the applicant swears to a conclusion only (MCL 600.4501; MCR 3.306[B][3][b]).

*Clarence B. Tucker, Sr., P.L.L.C.* (by *Clarence B. Tucker, Sr.*), for Tommy Joe Barrow.

*Honigman Miller Schwartz and Cohn LLP* (by *John D. Pirich* and *Andrea L. Hansen*) for the Mayor of Detroit.

*Krystal A. Crittendon*, Corporation Counsel, and *Joanne D. Stafford*, Assistant Corporation Counsel, for the city of Detroit, the Detroit Board of Canvassers, the Detroit Election Commission, the Detroit City Clerk, and members of the board of canvassers and elections commission.

*Marianne Talon*, Corporation Counsel, and *Janet Anderson-Davis*, Assistant Corporation Counsel, for the Wayne County Board of Canvassers and its members.

Before: SERVITTO, P.J., and ZAHRA and DONOFRIO, JJ.

PER CURIAM. Appellant, Tommy Joe Barrow, appeals as of right an opinion and order denying his emergency application for leave to file a complaint for quo warranto. Appellant filed this action for quo warranto in order to challenge the outcome of the November 2009 election of appellee Dave Bing as mayor of the city of Detroit. Because the trial court did not err by denying appellant's application for leave for the reason that appellant failed to allege specific facts warranting further inquiry by quo warranto, we affirm.

I

This action arises out of the November 3, 2009, general election in which both appellant and Dave Bing appeared on the ballot as candidates for mayor of the city of Detroit. On November 16, 2009, the board of city canvassers declared that appellant had received 50,785 votes and Bing received 70,166 votes in the mayoral election and certified Mayor Bing as the winner. On November 20, 2009, appellant filed a recount petition alleging "fraud, deliberate mistake and electronic manipulation" of the ballots cast in the election. At a meeting on November 23, 2009, the Wayne County Board of Canvassers approved appellant's recount petition. Thereafter, the Wayne County Board of Canvassers informed appellant that the recount would commence on December 9, 2009.

Before the recount date, on November 24, 2009, appellant sent a letter to the Wayne County Clerk requesting that she secure the ballots pending the recount, alleging that the ballots were "under the sole control of the building Janitor." On the same day, the Wayne County Board of Canvassers, through its attorney, sent appellant an e-mail informing him that Michigan election law contained procedures for ballot secu-

rity pending a recount and that "[a]bsent a court order, the statutory procedures will be followed." It is undisputed that appellant did not seek a court order.

The recount was held on December 9, 2009, as scheduled. Following the recount, the Wayne County Board of Canvassers met and addressed appellant's various challenges at a series of meetings on December 11, 15, 18, 22, and 23, 2009. On December 23, 2009, the Wayne County Board of Canvassers approved a motion to certify the election, despite appellant's assertion "that there were 49,386 votes that were not recountable." The Wayne County Board of Canvassers' certification of the results of the recount as 47,062 votes for appellant and 65,946 votes for Mayor Bing was filed on December 24, 2009.

On December 30, 2009, appellant wrote letters of complaint to the Wayne County Prosecutor, the Michigan Attorney General, and the Bureau of Elections of the Michigan Secretary of State, asking each to initiate an investigation. On January 5, 2010, appellant again wrote to the Attorney General, asking him to initiate quo warranto proceedings. On January 15, 2010, the prosecutor declined to proceed. On February 9, 2010, the Attorney General informed appellant by letter that he had routed appellant's letter to the criminal division for review and that review of the appellant's complaint materials was complete. In the letter, the Attorney General explained that there was a "lack of evidence of criminal intent to defraud," contrary to appellant's allegations, and declined to take further action at that time. On February 23, 2010, the Attorney General also declined to seek a writ of quo warranto. On February 23, 2010, the Secretary of State issued a letter informing appellant that she had conducted an inquiry into appellant's complaint, that the investigation revealed

"no evidence to indicate or suggest that any type of fraudulent vote manipulation occurred during or after the administration of the election," and that the investigation was concluded.

On April 2, 2010, appellant filed an "Emergency Application for Leave to File Quo Warranto Action" in the circuit court, alleging that various election law errors, mistakes, and violations were committed that undermined any confidence in the outcome of the election. The Wayne County appellees[1] filed an answer on April 7, 2010, denying appellant's allegations that Mayor Bing had usurped the office of mayor and was not entitled to that office on the basis of the election of November 3, 2009. On April 8, 2010, the Wayne County appellees filed a brief in support of their answer, arguing that appellant had failed to make out a prima facie case of fraud or error or show that he was entitled to the mayor's position. They also argued that appellant's application was time-barred or barred by laches.

Mayor Bing filed an answer to the application, denying appellant's allegations on April 9, 2010. On May 3, 2010, Mayor Bing filed a brief in support, arguing that appellant had failed to show factual support for his allegations. The city of Detroit appellees[2] filed an appearance on May 4, 2010, but did not file an answer or a brief in opposition to appellant's application. On May 7, 2010, appellant filed a reply brief in support of his application, arguing that a "monumental number of irregularities which may have indeed derived from

---

[1] The Wayne County appellees consist of the Wayne County Board of Canvassers and its members: Krista Hartounian, Carol Larkin, Joseph Xuereb, and John Doe #2.

[2] The city of Detroit appellees consist of (1) the city of Detroit, (2) the Detroit Board of Canvassers and its members, Dorothy Burrell, Edward Hartounian, and Walter Kroppy, and (3) the Detroit Elections Commission and its members, Daniel Baxter, Edwin Ukagbu, and George Azzuz.

fraud or gross errors" justified inquiry by quo warranto. Appellant also denied that his application was time-barred or barred by laches or would cause harm or undue expense to the public.

At a hearing on May 10, 2010, appellant argued that the trial court should grant his request for leave to proceed in quo warranto because of appellees' failure to comply with mandatory provisions concerning ballot container seals and calibration of clocks in the voting machines, resulting in 59,135 ballots not being re-counted, which were more than enough to change the outcome of the election. Appellant maintained that he was not asserting material fraud or error, which would have been subject to a 30-day limitations period.

The county appellees countered that because propositions B and S were on the same ballot as the mayor's race, the statutory subsection of MCL 600.4545 dealing with material fraud or error applied and appellant's application was time-barred. The county appellees argued that if the election were declared invalid, a new election would be required, including a new primary, at substantial public cost. The county appellees argued that appellant had failed to plead specific facts necessary for the court to conclude that fraud or irregularities existed and, instead, had simply promised to develop supporting evidence at a later date. Further, the county appellees argued that appellant's allegations were unsupported because the Attorney General and the Secretary of State had both investigated the matter and neither had found evidence of fraud or vote manipulation.

Mayor Bing adopted the county appellees' arguments, noting that appellant had stated in his reply brief that he observed numerous irregularities that "may have indeed derived from fraud or gross errors."

Mayor Bing also observed that such speculation was insufficient to meet the required specificity standard. Mayor Bing then summarized the substantive allegations of appellant's application and argued that appellant had failed to make allegations that were factually specific enough to justify further inquiry by quo warranto. Mayor Bing noted that approximately 80 out of 100 absentee precincts were counted before those ballots were deemed unrecountable and that the results of that recount (before it was halted) agreed with the original results. Further, there was no evidence that the polls were open fewer hours than required by law, so those 9,649 ballots (while unrecountable) were unremarkable. Moreover, Michigan election law requires that when precincts are deemed unrecountable because of sealing issues, the original results stand.

The city appellees adopted the arguments made by the other attorneys, adding that holding a new election would cost approximately $2 million and would cause "extreme" financial hardship. In reply, appellant's counsel admitted that "we don't know how [the irregularities] happened. Could have been inadvertence, incompetence, could have been any number of reasons," so "[w]e didn't plead that." The trial court took the matter under advisement.

On May 11, 2010, the trial court issued an opinion and order denying appellant's application. The trial court stated that when determining whether to grant leave, it was required to determine "whether the application discloses sufficient apparent merit to justify further inquiry by *quo warranto* proceedings." The trial court found that appellant's essential claim was that

> Detroit election officials had made such numerous errors, and mistakes, and had engaged in such numerous violations of Michigan election law that the number of ballots

deemed not to be recountable or tainted was more than six (6) times the number necessary to alter the outcome of the city's general election for mayor.

The trial court observed that appellant claimed in particular that 41,485 absentee ballots and 8,001 other ballots were deemed unrecountable; that another 9,649 ballots had dates and times calling into question whether the precincts were open during the hours required by law; that a total of 59,135 ballots (47.4 percent of the total vote for mayor) were found to be unrecountable; that " 'an additional unknown number of countable ballots have likely been tampered with and manipulated, further eliminating any reasonable certainty as to the true outcome of the election' "; and, thus, that " 'there exists no reasonable certainty that any winner could be determined accurately and with the required legal certainty.' "

The trial court specifically found the following:

> As the aforementioned portions of Plaintiff's[3] application illustrate, Plaintiff has failed to allege any specific facts establishing that ballots were tampered with and/or manipulated, or that Defendants engaged in unlawful acts. Even assuming that Plaintiff's action is premised on irregularities as opposed to actual ballot tampering or other illegal acts, he has failed to state facts sufficient to support an inquiry into whether Bing usurped the office of mayor on the basis of those irregularities. Specifically, Plaintiff has failed to allege facts in support of his conclusion that any ballots which were not recounted were not valid as cast. He has also failed to provide factual support for his allegations that the Detroit Board of Canvassers "repeatedly violated statute election law and procedures."

---

[3] Although no suit was filed in this case, the trial court proceedings consistently refer to appellant as "Plaintiff" and appellees as "Defendants." For simplicity's sake, we have not changed these designations in quoted material.

The trial court concluded that appellant had failed to show that his application had "sufficient apparent merit to justify further inquiry by quo warranto" proceedings into Mayor Bing's position as mayor of the city of Detroit and denied appellant's application for leave. This appeal followed.[4]

II

Appellant's sole argument on appeal is that the trial court erred by denying his application for leave to file an action for quo warranto because the application disclosed sufficient merit to justify further inquiry by quo warranto proceedings. Appellant asserts that he proceeded under MCL 600.4505 and alleged usurpation due to the massive number of irregularities (i.e., errors, mistakes, and violations of Michigan election laws). Appellant maintains that his application was based on the 59,135 irregular ballots resulting from numerous election law violations that were disclosed by the December 2009 recount and that he did *not* allege election fraud and did *not* seek to set aside the entire November 2009 election.

The county appellees, the city appellees, and Mayor Bing all respond that the trial court correctly held that appellant failed to allege specific facts warranting further inquiry by quo warranto and, for that reason, properly denied appellant's application. The county appellees argue that caselaw requires appellant to offer "critical facts" in support of his applica-

---

[4] On June 16, 2010, this Court denied appellant's motion for peremptory reversal. *Barrow v Detroit Mayor*, unpublished order of the Court of Appeals, entered June 16, 2010 (Docket No. 298128). On June 18, 2010, this Court granted in part the city of Detroit's motion to expedite this appeal. *Barrow v Detroit Mayor*, unpublished order of the Court of Appeals, entered June 18, 2010 (Docket No. 298128).

tion for leave to file an action for quo warranto showing a prima facie case of usurpation and that he did not do so. The county appellees contend that the trial court could not determine from the face of appellant's application that fraud or errors were committed. Additionally, the county appellees assert that appellant failed to include allegations showing his entitlement to the office of mayor, not mere uncertainty concerning the true outcome.

The city appellees argue that appellant's application for leave to proceed by quo warranto alleged no facts to support his claims that ballots were tainted, that the winner of the election could not be ascertained, that errors and mistakes were made, or that Detroit election officials engaged in numerous election law violations. Similarly, Mayor Bing asserts that appellant failed to allege, much less offer proof of, any actual facts that would warrant further investigation by quo warranto. Mayor Bing contends that appellant has offered speculation rather than any facts tending to show that the election was improper and simply complains that various authorities failed to take the steps he requested concerning his various concerns.

III

A court's decision whether to grant or deny an application for leave to proceed by quo warranto is reviewed for an abuse of discretion. *Shoemaker v City of Southgate*, 24 Mich App 676, 680-681; 180 NW2d 815 (1970); *McDonald v Jackson*, 3 Mich App 287, 288-290; 142 NW2d 42 (1966). An abuse of discretion occurs only when the trial court's decision falls outside the range of "reasonable and principled outcome[s]." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

IV

"Quo warranto" literally means "by what authority." Black's Law Dictionary (8th ed), p 1285. It is "[a] common-law writ used to inquire into the authority by which a public office is held or a franchise is claimed." *Id.* MCR 3.306 governs actions for quo warranto. The rule provides, in pertinent part:

(A) Jurisdiction.

(1) An action for quo warranto against a person who usurps, intrudes into, or unlawfully holds or exercises a state office, or against a state officer who does or suffers an act that by law works a forfeiture of the office, must be brought in the Court of Appeals.

(2) All other actions for quo warranto must be brought in the circuit court.

(B) Parties.

(1) Actions by Attorney General. An action for quo warranto is to be brought by the Attorney General when the action is against:

(a) a person specified in subrule (A)(1);

(b) *a person who usurps, intrudes into, or wrongfully holds or exercises an office in a public corporation created by this state's authority*[.]

\* \* \* .

(3) Application to Attorney General.

(a) A person may apply to the Attorney General to have the Attorney General bring an action specified in subrule (B)(1). The Attorney General may require the person to give security to indemnify the state against all costs and expenses of the action. The person making the application, and any other person having the proper interest, may be joined as parties plaintiff.

(b) *If, on proper application and offer of security, the Attorney General refuses to bring the action, the person may*

*apply to the appropriate court for leave to bring the action himself or herself.*

(C) Person Alleged to be Entitled to Office. *If the action is brought against the defendant for usurping an office, the complaint may name the person rightfully entitled to the office, with an allegation of his or her right to it, and that person may be made a party.* [Emphasis added.]

MCL 600.4501 echoes the court rule's provision allowing a private party to bring an action for quo warranto by leave of court if the Attorney General refuses to act. A quo warranto action may be brought under MCL 600.4505, which provides:

(1) In actions brought *against persons* for *usurpation of office*, the judgment may determine the right of the defendant to hold the office. If a party plaintiff alleges that he is entitled to the office, the court may decide which of the parties is entitled to hold the office.

(2) If judgment is rendered in favor of a party who is averred to be entitled to the office, he is entitled, after taking the oath of office, and executing any official bond which is required by law, to take the office. Such party shall be given all the books and papers in the custody of the defendant, or within his power, belonging to the office. [Emphasis added.]

An action under MCL 600.4505 is appropriate when the plaintiff seeks to challenge the defendant's right to hold office, but fraud or error is not alleged. See *People ex rel Wexford Co Prosecuting Attorney v Kearney*, 345 Mich 680, 692; 77 NW2d 115 (1956). A plaintiff can prevail under MCL 600.4505 only by showing "his own good title" to the office. *Ebright v Buck*, 326 Mich 208, 212; 40 NW2d 122 (1949); see also *Marian v Beard*, 259 Mich 183, 185-187; 242 NW 880 (1932).

"[A]ny damages sustained because of the usurpation" can be recovered under MCL 600.4511, and such a claim may be asserted independently, or as part of the

plaintiff's action for quo warranto. Additionally, under MCL 600.4515, a court may award costs and may fine a defendant "found or adjudged guilty of usurping or intruding into or unlawfully holding or exercising any office . . . ."

An action in the nature of quo warranto may be brought under MCL 600.4545, which provides:

> (1) An action may be brought in the circuit court of any county of this state whenever it appears that *material fraud or error has been committed at any election* in such county at which there has been submitted any constitutional amendment, question, or proposition to the electors of the state or any county, township, or municipality thereof.
>
> (2) Such action *shall be brought within 30 days* after such election by the attorney general or the prosecuting attorney of the proper county on his own relation, or on the relation of any citizen of said county without leave of the court, or by any citizen of the county by special leave of the court or a judge thereof. *Such action shall be brought against the municipality* wherein such fraud or error is alleged to have been committed.
>
> (3) *After such action is brought the procedure shall conform as near as may be to that provided by law for actions for quo warranto.* [Emphasis added.]

Accordingly, the 30-day limit applies only if the plaintiff alleges material fraud or error under MCL 600.4545. *Kearney*, 345 Mich at 692. Under MCL 600.4545, "material fraud or error" means fraud or error that "might have affected the outcome of the election." *St Joseph Twp v City of St Joseph*, 373 Mich 1, 6; 127 NW2d 858 (1964). While a "but for" showing is not necessary, the plaintiff's "proofs must be sufficient to support a fact finding that enough votes were tainted by the alleged fraud to affect the outcome." *Id.*

A traditional quo warranto action under MCL 600.4505 seeks to "try title" to the disputed office. *Risk v Lincoln Charter Twp Bd of Trustees*, 279 Mich App 389, 390 n 1; 760 NW2d 510 (2008). An action in the nature of quo warranto is brought to challenge the validity of the election itself. *Id.* MCL 600.4545 "does not apply to quo warranto actions to try title to a particular office, but only to test the validity of an election with regard to a constitutional amendment, question or proposition." *Stokes v Clerk of the Monroe Co Canvassers*, 29 Mich App 80, 84; 184 NW2d 746 (1970). "[H]owever, . . . actions in the nature of quo warranto . . . are functionally equivalent to traditional quo warranto actions and are consequently reviewable in the same manner." *Risk*, 279 Mich App at 390-391 n 1.

MCR 3.301(A)(1)(d) and (2) "govern the procedure for seeking the writs or relief formerly obtained by the writs," including a writ of quo warranto. In that regard, MCR 3.301(A)(3) provides that "[t]he general rules of procedure apply except as otherwise provided in this subchapter." MCR 2.111(A)(1) requires that allegations made in a pleading be clear, concise, and direct. MCR 2.112(B)(1) requires that fraud and mistake be pleaded with particularity. Other matters, including malice, intent, and knowledge, can be pleaded generally under MCR 2.112(B)(2). MCR 3.301 does not otherwise contain pleading requirements for a petition for leave to proceed by quo warranto. Nonetheless, our Supreme Court has held that an application for leave to file an action for quo warranto "should be so clear and positive in its statement of facts as to make out a clear case of right; and should be so framed as to sustain a charge of perjury if any material allegation is false." *Boucha v Alger Circuit Judge*, 159 Mich 610, 611; 124 NW 532

(1910), citing *Cain v Brown,* 111 Mich 657, 660; 70 NW 337 (1897); see also *Vrooman v Michie,* 69 Mich 42, 46; 36 NW 749 (1888).

*Vrooman* was "the first instance of [quo warranto] proceedings by a private relator . . . ." *Vrooman,* 69 Mich at 46. On appeal, the Supreme Court held that the trial court had properly dismissed the action because the plaintiff failed to respond substantively to the defendant's argument that, as supervisor, the plaintiff was disqualified from holding the appointed office in question. *Id.* at 45-46. Nonetheless, the Supreme Court found it "proper to remark on some peculiarities of the present record." *Id.* at 46. In dicta, the *Vrooman* Court stated that leave had been improperly granted by the trial court because the statute "does not contemplate that leave shall be granted without some showing [that the plaintiff is entitled to the office], as it was in this case." *Id.* at 46. The Court stated that when leave of the court is required for a given action, "[c]ourts can never act unless upon some responsible showing, and, as it is contrary to public policy to allow persons to be needlessly annoyed by vexatious claims, the statute . . . does not, as construed, permit a relator to proceed without exacting a very precise and positive showing." *Id.* The Court observed that

> a chief object in requiring leave is to prevent vexatious prosecutions; and the rule is inflexible that there must be affidavits so full and positive from persons knowing the facts as to make out a clear case of right in such a way that perjury may be brought if any material allegation is false. [*Id.*]

The Court stated that "the relator is not allowed to proceed without showing, not merely a good case in law against respondent, but also that public policy will be subserved by the proceeding." *Id.* at 46-47. Finally, the

Court stated that "[a]s no showing was made to obtain leave to file the information in the present case, leave should not have been granted."[5] *Id.* at 47.

In *Boucha*, 159 Mich at 610-611, the petition alleged that the election board had failed to count 11 votes in the relator's favor, allegedly because the ballots contained distinguishing marks when in fact they did not, that the real reason the election board refused to count those votes was that a majority of the board opposed the relator's election as township supervisor, and that the board had illegally counted "between one and ten ballots" for the relator's rival even though those ballots contained distinguishing marks and were therefore illegal. The *Boucha* Court stated that "[t]he law requires a precise and positive showing before the court will interfere" in the results of an election. *Id.* at 611. It also stated that an application for leave to file a complaint for quo warranto must "make a showing sufficiently clear and definite as to facts, to make out a *prima facie* case . . . ." *Id.* (quotation marks omitted). The Court also observed that leave should not be granted where the applicant "swears to a conclusion only." *Id.*

In *Penn Sch Dist No 7 v Lewis Cass Intermediate Sch Dist Bd of Ed*, 14 Mich App 109, 117; 165 NW2d 464 (1968), this Court stated that *Vrooman* and *Boucha*, among others, did not apply to actions brought under MCL 600.4545. In that case, however, the Court was discussing standing, not pleading requirements, and accordingly concluded that, unlike the plaintiff in an

---

[5] The Court also observed that in the "information" filed after being granted leave of the court, the plaintiff did "not point out the defect supposed to exist in respondent's title, but simply denies its validity." *Id.* at 43. The plaintiff also "does not claim to hold any title himself to the office, except as asserting a right to hold over under an old appointment . . . ." *Id.*

action under MCL 600.4505, a plaintiff in an action under MCL 600.4545 need not show a special interest in, or entitlement to, the position in question. *Id.* at 117-118. However, the Court agreed with *Vrooman* and *Boucha* that the controlling considerations in determining whether to grant leave are whether the applicant made the appropriate request to the Attorney General and "whether the application discloses sufficient apparent merit to justify further inquiry by quo warranto proceedings." *Id.* at 118.

In sum, leave to file an action for quo warranto is properly denied (as futile) when the application fails to disclose sufficient facts and grounds, and sufficient apparent merit, to justify further inquiry by quo warranto proceedings. 4 Longhofer & McKenna, Michigan Court Rules Practice (5th ed), pp 444-445; *Grand Rapids v Harper*, 32 Mich App 324, 329; 188 NW2d 668 (1971).

V

In the present case, appellant's application alleged that Mayor Bing usurped the office of mayor. Appellant requested leave to file an action for quo warranto under MCL 600.4505, based on the Attorney General's refusal to proceed. As far as his own entitlement to the office, appellant alleged that "[t]here is *a likelihood* that Plaintiff was in fact elected and Defendant David Bing has usurped the office." (Emphasis added.) Appellant alleged that before the primary election he "suspected" that ballot tampering would occur at the primary and that the authorities refused to act on those concerns before or after the primary. Appellant also alleged in his application that before the general election he was "concern[ed]" that "computer manipulation and ballot tampering" would occur at the general election, but the

authorities again refused to act before the election. After the general election, appellant sought a recount "based on computer manipulation and absentee ballot tampering," and his request for a recount was approved.

Appellant further alleged in his application, in particular:

> 8. The facts of this case and the evidence *to be developed* will show that:
>
> * * *
>
> e. Upon being granted the recount, Plaintiff immediately requested, in writing, that the county impound and secure the ballots as he believed that absentee and other voter ballot tampering would occur before the recount could begin. The county refused to act upon his request.
>
> f. During the recount conducted by the Wayne County Board of Canvassers it was revealed that Detroit election officials had made such numerous errors, and mistakes, and had engaged in such numerous violations of Michigan election law that the number of ballots deemed not to be recountable and or tainted was more than six (6) times than [sic] the number necessary to alter the outcome of the city's General election for mayor.
>
> g. The recount also revealed that Detroit election officials had failed to perform and enforce numerous procedures and requirements set forth by the State of Michigan designed to ensure the integrity of elections.
>
> h. As a direct and proximate result, the Wayne County Board of Canvassers determined:
>
> *i.* that 100% of the city's 41,485 absentee voter ballots were not recountable.
>
> *ii.* that an additional 8,001 of the city's polling precincts' voter ballots were not recountable.
>
> *iii.* that no less than an additional 9,649 precinct polling voter ballots had dates and times for which it could not be

determined with certainty that they had been cast in compliance with the state law requiring polls to remain open from 7am until 8pm.

    *iv.* [t]hat the total number of ballots tainted and or deemed not recountable by the Board of Canvassers was 59,135. [Emphasis added.]

Appellant also alleged that the official results of the election were 70,166 votes for Mayor Bing and 50,785 votes for appellant, a difference of 19,381 votes. Appellant further specifically alleged:

    11. While the Board of Canvassers determined that 59,135 ballots were deemed not recountable and or tainted (47.4% of the total cast for mayor), Plaintiff believed and continues to believe that an additional unknown number of the countable ballots have likely been tampered with and manipulated, further eliminating any reasonable certainty as to the true outcome of the election.

    12. The actual number of ballots necessary to change and alter the outcome of the election was only 9,692 (19,381 divided by 2 plus 1).

    13. Had a full County canvass resulted in a deduction of 9,692 ballots from Defendant and, of necessity, an addition of 9,692 ballots to Plaintiff, it would have altered the outcome of the election.

    14. Insofar as 59,135 ballots were deemed not recountable or tainted, there exists no reasonable certainty that any winner could be determined accurately and with the required legal certainty.

    15. Defendant Wayne County Board of Canvassers erred, breached its duty and abused its authority and discretion when despite having 59,135 out of a total of 124,802 (Defendant's 70,166, Plaintiff's 50,785, all others 3,851) ballots cast being tainted at [sic] which only 9,692 ballots separated Defendant from Plaintiff, it issued a certificate of election to the Defendant.

    16. Defendant Detroit Board of canvassers similarly erred, breached its duty and abused its authority and

discretion when it repeatedly violated state election law
and procedures in furtherance of the errors and irregulari-
ties.

17. As a direct and proximate result of the foregoing,
there exists no reasonable certainty as to which candidate
received the greatest number of legitimate, valid, and legal
votes and thus remediation is required.

Finally, appellant alleged that the trial court had the
authority to "see that this challenge to title is heard and
resolved."

Our review of the record reveals that the only specific
facts alleged by appellant were the number of ballots
deemed unrecountable, the number of votes in the origi-
nal election, and the number of votes it would take to
change the outcome. Appellant "suspected" that ballot
tampering occurred in the general election, but did not
allege that it did. Appellant alleged that Detroit election
officials committed "numerous errors, and mistakes," and
engaged in "numerous violations of Michigan election
law," but did not state what those errors, mistakes, or
violations were or whether they were committed before,
during, or after the election. Appellant further alleged
that, after the election, Detroit election officials "failed to
perform and enforce numerous procedures and require-
ments" to ensure the integrity of the ballots, but did not
specify what protocols were violated or how. Appellant
alleged that 59,135 ballots were found to be "tainted and
or deemed not recountable," but did not state how or why.
Appellant expressed his belief that "an additional un-
known number of the countable ballots have likely been
tampered with and manipulated," but again failed to state
how or when.

Appellant alleged that, given the number of unre-
countable ballots, there was no certainty concerning the
outcome. He alleged that, given the uncertainty, the

county board of canvassers erred, breached its duty, and abused its authority and discretion by certifying Mayor Bing as the winner. Appellant alleged that the Detroit Board of Canvassers similarly erred, breached its duty, and abused its authority and discretion when it repeatedly violated state election laws and procedures in furtherance of the errors and irregularities, but again failed to state what those errors or violations were, or when and how they occurred.

Since filing his application, appellant has made some effort to specify the particular errors and violations of law of which he complains and discusses them at length on appeal. However, appellant never attempted to amend his application to add any specific, precise, definite, or clear and positive factual allegations. Thus, we conclude that the trial court correctly concluded that appellant's application failed to disclose sufficient facts and grounds and sufficient apparent merit to justify further inquiry by quo warranto proceedings. Appellant's conclusory allegations that mistakes, errors, and election law violations occurred were simply insufficient to justify granting leave to file an action for quo warranto.

VI

We conclude that the trial court correctly held that appellant had failed to allege specific facts warranting further inquiry by quo warranto and properly denied appellant's application. For this reason, we need not reach any of the remaining issues raised by appellant—none of which the trial court decided. Nonetheless, the irregularities appellant alleges do not tend to show that any unrecountable ballots were not valid as originally cast or that Mayor Bing usurped the office of mayor.

Affirmed. Appellees, being the prevailing parties, may tax costs pursuant to MCR 7.219.