*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TOM ROTTA,

        Plaintiff-Appellee,

v

CITY OF LUDINGTON,

        Defendant-Appellant.

UNPUBLISHED
February 22, 2024

No. 364849
Mason Circuit Court
LC No. 22-000153-AW

Before: HOOD, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Defendant City of Ludington appeals as of right the trial court's order denying its motion for summary disposition and granting plaintiff Tom Rotta's cross-motion for summary disposition. We reverse and remand for entry of an order granting defendant's motion for summary disposition.

## I. FACTUAL AND PROCEDURAL HISTORY

This action arises out of a challenge to the approval of a ballot proposal to revise defendant City of Ludington's charter. At a Ludington city council meeting on June 14, 2021, city manager Mitch Foster asked council if they had any interest in seeking a charter commission to revise the city charter, and stated that he would put together information on cost and process to present to council.

At the November 8, 2021 city council meeting, city manager Foster presented a memorandum to council which stated, "The registered voters in the city will elect nine electors of the city to sit on the charter revision commission," and:

> The projected cost for a complete charter revision is being proposed in the upcoming budget and will cover a two year period of time. The proposed cost for 2022 is $34,000 and for 2023 is $47,300.

City council then passed the resolution attached to the memorandum, which states in pertinent part:

WHEREAS, the Section 18 of the Act (MCL §117.18), provides that the legislative body of a city may declare by a 3/5 vote of its members elect that there shall be a general revision of the city's charter, and if so declared, the question of whether to undertake such a general revision of the city charter shall be submitted to the electors of the city for adoption or rejection at the next general or municipal election, or at a special election; and

WHEREAS the next special election for the City will be held on May 3, 2022; and

* * *

NOW THEREFORE, BE IT RESOLVED that the City Council of the City of Ludington declares for a general revision of the City Charter of the City of Ludington, as provided and authorized by Public Act 279 of the Public Acts of 1909, State of Michigan, as amended.

BE IT FURTHER RESOLVED, that the question of having a general charter revision shall be submitted to the electors of the City for adoption or rejection at a special election, to be held on May 3, 2022.

The agenda for the city council's November 22, 2021 meeting included presentation of the 2022 Budget and Capital Improvement Plan, and at its December 6, 2021 meeting, city council held a public hearing on approval of the budget, and voted to approve the budget.

Ludington held an election on May 3, 2022, and asked voters, "Shall there be a general revision of the charter of the City of Ludington?" Voters approved the ballot proposal, with 667 votes for and 411 against (approximately 62% for and 38% against).

On June 2, 2022, plaintiff applied for leave to file a quo warranto complaint pursuant to MCL 600.4545, to challenge the May 3, 2022 election. In his attached complaint, plaintiff claimed election fraud or error, asserting defendant failed to properly "fix" the compensation of and expenses for the charter commission in accordance with MCL 117.19 of the Home Rule City Act (HRCA), MCL 117.1a *et seq*., which affected the outcome of the election because voters were unaware of the costs associated with revising the city charter. Specifically, plaintiff, a Ludington resident, alleged: the resolution passed by city council at the November 8, 2021 meeting failed to fix the compensation or expenses for the proposed revision commission; the line for "professional services" in the proposed 2022 budget "actually contained the 'hidden' proposed budget amount for the CRC, should the revision ballot question pass," but the budget passed at the next meeting with no clarification; "[p]roposed numbers in a budget, votes by councilors who were ignorant of the expenses allocated for the CRC in a deliberately vague line item of 'professional services' does not qualify as fixing the compensation of the CRC members or the money for the expenses thereof"; city council never adopted a resolution, ordinance, or motion fixing the costs of the charter revision commission; and "[n]o costs were assigned to the ballot question, making many if not most voters to believe that there would be no (or negligible) costs of a charter revision were they to vote 'yes.' "

Defendant responded in opposition to plaintiff's application for leave to file a quo warranto complaint, requesting that the court deny leave because plaintiff did not demonstrate material fraud

or error, nor that such error affected the outcome of the election. Defendant asserted plaintiff provided no affidavits or proofs, as is required, to support his claims of material error.

Over four months later, defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (10), asserting first that it fixed the compensation of commission members and overall expense of the commission in accordance with MCL 117.19, and that as early as November 8, 2021, the public had the opportunity to attend meetings or access the city manager's memorandum, included in the city council packet, which projected the cost for a 2022 and 2023 charter revision commission. According to defendant, it was not required to pass a resolution, ordinance, or motion to comply with MCL 117.19, and "as of the conclusion of the December 6th meeting of the City Council, the Council had (a) passed a resolution providing (*inter alia*) that the charter revision commission, if approved by the voters, would meet at City Hall, and it had also passed its official annual budget which (b) fixed the anticipated compensation of the charter revision commission members, and (c) budgeted monies for the expenses of the commission and its members' compensation." Defendant also argued that even if it failed to properly "fix" the costs for the charter revision commission, dismissal is required because plaintiff has failed to establish that a material fraud occurred, such that it affected the outcome of the election, to warrant leave to file a quo warranto complaint.

Plaintiff responded and also moved for summary disposition pursuant to MCR 2.116(C)(10), acknowledging that defendant fixed by resolution the place of meeting for the proposed commission, but arguing defendant otherwise failed to comply with MCL 117.19 because "to be totally clear the city council in passing the budget, along with the general public, did not have access to [the commission compensation and expense], only an unexplained 'professional services' line in the city clerk's budget section." Defendant replied on December 19, 2022, reiterating its arguments regarding material error and challenging plaintiff's arguments that adoption of the budget did not satisfy MCL 117.19.

Further, plaintiff asserted his complaint satisfied the requirements for quo warranto actions because defendant's violation of MCL 117.19 left the public unaware of charter revision costs, which "[m]ost assuredly" altered the outcome of the election. He also argued that the charter revision ballot proposal was misleading because it did not include the associated costs, and is therefore void. Thus, plaintiff requested that the court void the May 3, 2022 charter revision election results.

The court ruled on the record that adoption of the general budget may have been sufficient to fix the expenses for a revision commission, but was insufficient to fix the compensation in accordance with MCL 117.19. Additionally, in response to defendant counsel's inquiry regarding the materiality of any error, the court stated:

> I would say by not—by not complying with the statute, which is required under MCL 117.19, not putting that out there as far as the compensation, that would be a material thing that voters should—should've been informed of. And so, do I think that was done intentional? No. But on the other hand, I think that's—that's material for the voters to understand that so.

-3-

In an order entered January 19, 2023, the court codified its ruling, denying defendant's motion for summary disposition and granting plaintiff's counter-motion for summary disposition under MCR 2.116(C)(10). The court then amended that order on January 23, 2023, adding final order language.

## II. STANDARDS OF REVIEW

Defendant brought its summary-disposition motion under both MCR 2.116(C)(8) and (10), but the trial court granted plaintiff's counter-motion under MCR 2.116(C)(10). This Court reviews de novo a trial court's grant of summary disposition. *Int'l Union UAW v Central Mich Univ Trustees*, 295 Mich App 486, 493; 815 NW2d 132 (2012).

> A motion for summary disposition made under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In ruling on a motion brought under (C)(10), [t]he Court considers all affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. [*Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 449; 980 NW2d 119 (2021) (quotations marks and citations omitted; alteration in original).]

"Summary disposition is proper if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Lakeview Commons v Empower Yourself*, 290 Mich App 503, 506; 802 NW2d 712 (2010) (quotation marks and citation omitted). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Id*. (quotation marks and citation omitted).

The trial court did not explicitly rule on plaintiff's quo warranto application. To the extent the trial court implicitly granted plaintiff leave to proceed quo warranto by granting him summary disposition, that decision is reviewed for an abuse of discretion. *Barrow v Detroit Mayor*, 290 Mich App 530, 539; 802 NW2d 658 (2010). "An abuse of discretion occurs only when the trial court's decision falls outside the range of 'reasonable and principled outcome[s].' " *Id*. (citation omitted; alteration in original).

## III. ANALYSIS

Again, plaintiff applied for leave to proceed quo warranto to challenge the approval of the May 3, 2022 charter revision ballot proposal on the basis that defendant failed to "fix" the compensation and expenses for the revision commission prior to that election in accordance with MCL 117.19.

Under MCL 600.4545:

An action may be brought in the circuit court of any county of this state whenever it appears that material fraud or error has been committed at any election in such county at which there has been submitted any constitutional amendment, question,

-4-

or proposition to the electors of the state or any county, township, or municipality thereof. [MCL 600.4545(1).][1]

"To proceed with a claim for quo warranto, a citizen must obtain leave of the trial court. MCR 3.306(B)(2)." *Hanlin v Saugatuck Twp*, 299 Mich App 233, 238; 829 NW2d 335 (2013). "Under MCL 600.4545, 'material fraud or error' means fraud or error that 'might have affected the outcome of the election.'" *Barrow*, 290 Mich App at 542 (citation omitted). In other words, "[a] trial court properly denies an application to proceed by quo warranto when the application fails to disclose sufficient facts and grounds and sufficient apparent merit to justify further inquiry." *Hanlin*, 299 Mich App at 238. "While a 'but for' showing is not necessary, the plaintiff's 'proofs must be sufficient to support a fact finding that enough votes were tainted by the alleged fraud to affect the outcome.'" *Barrow*, 290 Mich App at 542.

For two separate reasons, plaintiff was not entitled to quo warranto relief. First, the city committed no error in conducting the election. Second, even if it did, plaintiff produced no evidence that the error was material to the election results.

## A. THE CITY COMPLIED WITH MCL 117.19

The first question is whether the city violated state law when seeking a vote on the charter commission. Under the HRCA:

Any city desiring to revise its charter shall do so in the following manner, unless otherwise provided by charter; when its legislative body shall by a 3/5 vote of the members elect declare for a general revision of the charter, or when an initiatory petition shall be presented therefor as provided in section 25, the question of having a general charter revision shall be submitted to the electors for adoption or rejection at the next general or municipal election, or at a special election. In case the electors shall, by a majority vote, declare in favor of such revision, a charter commission shall be elected within 60 days consisting of 9 electors . . . . [MCL 117.18]

Further, under section 19 of the HRCA:

The legislative body of the municipality unless it is otherwise provided, shall fix in advance of the election of a charter commission the place of its meeting, the compensation of its members, the money for the expense thereof, and if need be provide the ballots for election. [MCL 117.19.]

Here, city council passed a resolution in November 2021 declaring for a general revision of the city charter and resolving to submit the question to electors at a special election held on May 3, 2022. The measure passed on May 3 by a vote of 667 to 411 (approximately 62% for and 38% against). However, the trial court ultimately considered plaintiff's quo warranto application and

---

[1] This is the version of MCL 600.4545(1) effective until February 13, 2024. The amendments to MCL 600.4545(1) do not change our analysis.

complaint and granted his motion for summary disposition on the basis that defendant failed to fix at least the compensation for potential revision commission members prior to the election.

On appeal, as below, defendant argues that it complied with the mandates of MCL 117.19 to fix compensation and expenses for the proposed charter revision commission, citing documents included with its summary-disposition motion that were compiled to assist in drafting the city's 2022-2024 budgets, as well as the city council's adoption of the budget on December 6, 2022, which included the estimated expenses for the charter revision commission.[2]

As both parties admit, the statute itself does not define "fix." Plaintiff looks to the dictionary definition, asserting that to fix means to "agree on," and argues that MCL 117.19 does not allow for a city to fix costs and compensation in proposed budgets. But plaintiff cites no caselaw directly supporting this argument, nor does defendant cite caselaw supporting its argument that passing a budget fixes compensation and expenses under MCL 117.19. Rather, plaintiff argues that defendant did not fix the compensation and costs for the proposed charter revision commission because city council never saw the budget worksheets where the expected revision costs were covered, no votes or discussion regarding compensation occurred after the November 8, 2021 council meeting, and "the [city] council cannot fix the costs of the charter revision by having their administrators hide it deep in the budget where nobody else can find, . . . [n]or can the city council reasonably have been given the power to fix the costs just by their reception of a memo from the city manager."

The evidence in the record, however, contradicts plaintiff's assertions. With its motion for summary disposition, defendant produced a document entitled "CHARTER REVISION BUDGET BUDGETED COSTS FOR 2022 AND 2023," which lists estimated wages for charter commission members at $13,500 for 2022 and $6,750 for 2023, and adds those wages to projected costs for an estimated total budget of $34,228.10 for 2022 and $47,264.05 for 2023. Defendant also produced a document entitled "2022 Expenditure Budget" containing as line items these same total projected budgets for "Charter Revisions" under a broader category entitled "801 Professional Services," with a total budget of $46,725 for 2022 and $63,575 for 2023. And the budget ultimately adopted by city council includes $46,800 for "professional services" in 2022 and $63,600 in 2023.[3]

Defendant asserts that these documents along with others were included in city staff's efforts to develop the city's proposed budget. Although it is unclear whether city council as a whole saw each of these specific documents, at a minimum it appears that at least the finance and/or personnel committee(s) reviewed and utilized them in formulation of the city's budget for 2022 and 2023, as the budget ultimately adopted by city council included the totals matching each. Further, city manager Foster's memorandum to council included the proposed budget for the commission, stating:

---

[2] The meeting place requirement in MCL 117.19 is not at issue.

[3] Although passed after the May 3, 2022 election, city council's June 27, 2022 resolution acknowledging and reaffirming the place of meeting, compensation, and expenses for the charter revision commission includes the above information.

The projected cost for a complete charter revision is being proposed in the upcoming budget and will cover a two year period of time. The proposed cost for 2022 is $34,000 and for 2023 is $47,300.

Considering the above evidence, despite the lack of law regarding how compensation and expenses are appropriately fixed for charter revision commissions, there is no genuine issue of material fact as to whether defendant complied with MCL 117.19. Defendant fixed both compensation and expenses for the proposed charter revision commission through the budget process that ultimately resulted in the 2022 and 2023 budgets, which incorporated funds specifically delineated for compensation and expenses of the proposed charter revision commission. The statute only requires that those figures be "fixed" prior to the election, and the unrefuted evidence shows that they were.

Plaintiff disputes defendant's ability to fix compensation and expenses for the charter revision commission by citing city charter provisions which require fixing the compensation of certain individuals by resolution, but he does not explicitly argue that these provisions apply directly to charter revision commission members. And his citation to the Michigan Municipal League handbook is no more convincing. According to plaintiff, the handbook indicates that no special procedure for carrying out the directives of MCL 117.19 is prescribed, but normally one or more resolutions would be adopted. However, at least according to plaintiff's representation of the contents of the handbook, resolution is not necessary to comply with MCL 117.19. Rather, it is simply suggested or often utilized, and there is no indication that the handbook is binding on defendant.

## B. NO MATERIAL ERROR

However, even assuming, *arguendo*, that defendant did not properly fix the compensation and expenses for its proposed charter commission prior to the May 3, 2022 election, the trial court abused its discretion by implicitly granting plaintiff's application for quo warranto relief. Again, defendant applied for leave to file a quo warranto complaint pursuant to MCL 600.4545, which requires in part that a successful plaintiff provide facts showing that any error was "material."

Here, not only did the trial court fail to make any finding on the basis of plaintiff's proofs that the outcome of the election may have been different, but plaintiff failed to disclose facts sufficient to support a fact finding that any error in fixing the compensation and/or expenses for the charter revision commission in accordance with MCL 117.19 might have altered the outcome of the election. In his complaint, plaintiff alleges that through omission of expenses, voters were led to believe that a vote for a charter commission would impose no additional costs on the citizens of Ludington, and "[b]ased upon the allegations contained herein, material fraud or error occurred in Ludington's special election on May 3, 2022 so that the outcome of the election was affected, namely voters had a legal right to know what the proposed charter commissions' compensation and the money for the expense thereof was fixed at before they cast an up or down vote on whether to do a charter revision." These allegations, however, are purely speculative, and no evidence produced by plaintiff supports a different conclusion. See *Hanlin*, 299 Mich App at 238 ("A trial court properly denies an application to proceed by quo warranto when the application fails to disclose sufficient facts and grounds and sufficient apparent merit to justify further inquiry."). And, as provided above, much of the information regarding the costs of a charter revision

commission—including the total amount budgeted for each year of its operation—were publicly available. Further, although the trial court found that it was "material" for voters to have knowledge of compensation for charter revision commission members, that is *not* a finding that any error in fixing compensation and expenses under MCL 117.19 was material such that it might have affected the outcome of the election. Accordingly, the trial court erred by granting plaintiff's motion for summary disposition and thereby implicitly abused its discretion in granting his application to proceed quo warranto.

We reverse and remand for entry of an order granting defendant's motion for summary disposition. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado