DAVID FREY v. ALEXANDER MICHIE AND HENRY F. HORNER, COUNTY SUPERINTENDENTS OF THE POOR OF WAYNE COUNTY.

*Title to office—Mandamus—Bill in equity—Quo warranto.*

1. The repeated decisions of this Court show the impropriety of allowing a private relator by *mandamus* to litigate the title of his adversary to a public office, which impropriety is more marked where, in assailing that title, the appointing or electing power of two municipal corporations with rival claims would have to be discussed and decided collaterally.

   So *held*, where an appointee of the board of supervisors of Wayne county to the office of county superintendent of the poor applied for *mandamus* to compel two of the superintendents to admit him as a member of the board in place of a *later* appointee of the county board of auditors of the same county, both boards claiming such appointing power; and the writ was denied both as an improper remedy, and as one which would not, if competent, settle any rights, and as seeking by private proceedings to unsettle a long course of public business.

2. The following propositions are summarized from the opinion of Mr. Justice CAMPBELL:

   a—A legislative interpretation of old laws has no *judicial* force.
   b—A practical construction of a statute under which the right of appointment to office has been exercised for more than a third of a century by a municipal corporation, and not disturbed by any one, whether conclusive or not, deserves too much respect to

throw any doubt on the right of *later* appointees to be treated as valid officers *de facto* at least.

*c*—The only way to try titles to office finally and conclusively is by *quo warranto*.

*d*—Even when *mandamus* is issued to seat a person who produces the proper evidences of title, it does not settle the *title* at all.

*e*—A bill in equity will not 'lie to determine between two municipal bodies asserting the same power of appointment, but the boundaries of their franchises must be determined by *quo warranto*.

*f*—A bill in equity only lies in aid of *quo warranto*, where expressly authorized by statute, and never to determine the usurpation of office or franchises.

*g*—Under our system, while a private person may have a valuable interest in an office, we have always treated it as a public trust in which the public interest is paramount.

*h*—Although a relator may be brought into the record in *quo warranto* cases as a claimant of office, yet he is not a necessary party, and has no control over the litigation. The proceeding, although of a mixed character, is technically an information for misdemeanor, and ouster of the usurper is not its only purpose. It may continue after his tenure expires, and the court may, if it chooses, punish him by fine. *People v. Hartwell*, 12 Mich. 508; *People v. Miller*, 16 Id. 205.

*i*—The respondent in a *quo warranto* case has an absolute right to trial by jury. *People v. Doesbur*, 16 Mich. 133.

*j*—The default of a defendant in a *quo warranto* case leads to his ouster, but not to judgment for relator. *People v. Connor*, 13 Mich. 238; *People v. Molitor*, 23 Id. 341.

*k*—The relator in a *quo warranto* case cannot withdraw and influence the prosecution in favor of defendant or any one else. *People v. Knight*, 13 Mich. 230.

*l*—Quo warranto cases begun at the circuit cannot be brought to this Court without the intervention of the Attorney General as representative of the State. *Babcock v. Hanselman*, 56 Mich. 27.

Application for *mandamus* to seat an appointee of the board of supervisors of Wayne county as a county superintendent of the poor. Submitted January 17, 1888. Denied January 26, 1888. The facts are stated in the opinion.

*Henry M. Duffield,* for relator.

*Edwin F. Conely,* for respondents.

CAMPBELL, J.   This Court, upon the application of rela-
tor, gave him an order on respondents to show cause ·why
they do not admit him to sit with them as their colleague
on the board of county superintendents of the poor of
Wayne county.   Notice was ordered to be served on the par-
ties interested, and notice was actually served on the board
of county auditors of Wayne county, and upon Patrick
Blake, the appointee of the board of auditors to the place
claimed by relator.   All of these parties answered and showed
cause.   The question now arises whether a *mandamus* should
issue as prayed.   This requires a statement of the real con-
troversy.

The petition does not fully set out the real state of the
case.   It avers no more, in substance, than the appointment
of relator by the board of supervisors of Wayne county at
the October meeting in 1887, to a three years' term, begin-
ning January 1, 1888; the filing of a bill by the Attorney
General to prevent such an appointment by the board of
auditors, and an injunction granted, which was dissolved
December 31, 1887; the appointment of Patrick Blake by
the auditors thereafter; and the refusal of respondents to
admit relator on January 3, 1888, when he produced his
appointment and demanded his seat, on the ground of the
nullity of his appointment. .It does not show what person
he was to succeed as outgoing commissioner, and it does not
attempt to explain the real controversy.   But as the answers
have put us in full possession of the omitted facts, we shall
proceed to consider them.

The real controversy is one between the board of county
auditors of Wayne county, and the board of supervisors of
the same county, concerning their respective claims to exer-
cise the appointing power.   Neither of these bodies is made
respondent, and it is not seriously claimed that either of

them could be, to a petition for *mandamus.* The application is, therefore, as now explained, one to settle the powers of two important county boards, in a controversy between private persons. This is of itself a very serious consideration in passing upon the jurisdictional dispute. But a fuller reference to the condition of things will enable us to determine very readily how far this proceeding should be sustained.

It appears from the returns that, when the petition was filed, the office was already full, Mr. Blake having been admitted to his seat. This fact ought not to have been omitted from the petition. It appears, further, that he was chosen as his own successor, and there was no interval between his holding and re-appointment. It appears, further, that Blake was appointed by the board of auditors, and that both of the respondents were appointed in the same way, so that if he is not in office they are not.

Under this petition it cannot be disputed that all of these persons are officers *de facto.* But this does not rest on estoppel. It appears that before and ever since the adoption of the Constitution of 1850—a period of over 40 years—the county auditors have always made these appointments. If there is anything to make it illegal, it has only been traced to the Constitution of 1850. Reference was made, but with no apparent confidence, to an amendatory act passed in 1885, whereby the old section (1756) of Howell's Compilation, which provided for the appointment of county superintendents, was changed by an addition making the city poor commissioners of Detroit *ex officio* members of the county board, so that it should "consist of the three superintendents appointed by the supervisors, and of the members of the board of poor commissioners of the city of Detroit." Laws of 1885, p. 76. The only change made was by this amendment, which did not purport to make any change in the board as existing, except by adding to its numbers the outside members. This mention of appointees of the supervisors, at most,.

could only be a legislative opinion on the practice under the existing law, which it did not attempt to change as to the mode of appointment. It is unnecessary to say more than that a legislative interpretation of old laws has no judicial force. Whether right or wrong must be determined by the statutes themselves. Previous to 1850 the county auditors were vested with the same powers conferred on boards of supervisors under State laws, with some specified exceptions. How. Stat. § 513. This statutory grant has never been expressly repealed, and, whatever else was out of their power, they certainly appointed the county superintendents of the poor. If there is any change in this regard, it is worked by implication from the Constitution or subsequent legislation.

Whether this has been done we do not now propose to decide, for several reasons which will be referred to. A practical construction for more than a third of a century, not disturbed until now by any one, whether conclusive or not, deserves too much respect to throw any doubt on the right of respondents and Mr. Blake to be treated as valid officers *de facto* at least. And this is conclusive against the present application, and has been so held directly and impliedly by a course of decisions of this Court.

The only way to try titles to office finally and conclusively is by *quo warranto*. Even where a *mandamus* is issued to seat a person who produces the proper evidences of title, it does not settle the title at all. *Doran v. De Long,* 48 Mich. 552; *People v. Detroit,* 18 Id. 338. It was held in *Jhons v. People,* 25 Mich. 499, that the title to office cannot be tried collaterally. See, also, *Curran v. Norris,* 58 Mich. 512 (25 N. W. Rep. 500). And although a bill in equity has a broader operation than a writ of *mandamus,* and is further reaching, it was held in *Detroit v. Board of Public Works,* 23 Mich. 546, that it would not lie to determine between two municipal bodies asserting the same power of appointment, and that the boundaries of their franchises must be determined

by *quo warranto*. The bill filed against the board of audi-
tors, referred to in the return as well as in the petition, came
within this decision, and the injunction dissolved by the cir-
cuit court should never have been granted. It only lies in
aid of *quo warranto*, where expressly authorized by statute,
and it does not lie at all to determine the usurpation of
office or franchises.

But there is no rule of law which will allow the title to
office to be tried in a private controversy controlled by indi-
viduals.  Under our system, while a private person may have
a valuable interest in an office, we have always treated it as
a public trust in which the public interest is paramount.
Although a relator may be brought into the record in *quo
warranto* cases as a claimant of office, yet he is not a neces-
sary party, and has no control over the litigation.  The pro-
ceeding, although of a mixed character, is technically an
information for misdemeanor, and ouster of the usurper is
not its only purpose. It may continue after his tenure
expires, and the court may, if it chooses, punish him by fine.
*People v. Hartwell*, 12 Mich. 508; *People v. Miller*, 16 Id.
205.

It was held in *People v. Doesburg*, 16 Mich. 133, that
respondent had an absolute right to trial by jury.  While in
*mandamus* cases issues may also be tried by jury, yet it is not
in many respects like a common-law jury trial on an issue
upon the information and regular pleadings.  But, as already
suggested, the issue is between the people and the respondent
charged with usurpation.  The defendant's default leads to
his ouster, but not to judgment for relator.  *People v. Con-
nor*, 13 Mich. 238; *People v. Molitor*, 23 Id. 341.  The
relator cannot withdraw and influence the prosecution in
favor of defendant, or any one else.  *People v. Knight*, 13
Mich. 230.  No one can be recognized but the Attorney
General for notices or stipulations.  *People v. Pratt*, 14
Mich. 333, and 15 Id. 184; *People v. Molitor*, 23 Id. 341.

All of those cases show the impropriety of allowing a private relator by *mandamus* to litigate the title of his adversary. And this is the more improper, where, in assailing that title, the appointing or electing power of two municipal corporations with rival claims would have to be discussed and decided collaterally. Even in *quo warranto* cases begun at the circuit, they cannot be brought to this Court without the intervention of the Attorney General as representative of the State. *Babcock v. Hanselman,* 56 Mich. 27 (22 N. W. Rep. 99). And, under the discretion vested in this Court in cases of *quo warranto,* it would be our duty to prevent litigation which would not further the complete settlement of the controversy.

The only way in which the disputes concerning the distribution of powers between the auditors and supervisors can be completely set at rest is by proceedings to test the right of the board charged with usurpation of franchises. How far this ought to be done after so long an acquiescence, without legislative action, it is not for us on this record to suggest. All of the disputed powers or actions may not perhaps involve special franchises, but the power of appointment to office is a franchise beyond any question. We should be very averse to sanctioning any partial or inconclusive proceedings.

The *mandamus* is denied both as an improper remedy, and as one which would not, if competent, settle any rights, and as seeking by private proceedings to unsettle a long course of public business. Respondents will recover costs.

SHERWOOD, C. J., CHAMPLIN and MORSE, JJ., concurred. LONG, J., did not sit.