JOHN J. VROOMAN V. ALEXANDER MICHIE.

[See 68 Mich. 323.

*Quo warranto—Information by private relator—Burden of contro-
versy—Writ of error.*

1. Where a *private* relator files an information in the nature of a *quo
warranto*, to which respondent interposes a plea setting up the
statutory *incapacity* of the relator to hold the office, a distinct
issue is raised requiring a reply, and by demurring generally to
such plea the relator entitles the respondent to judgment without
reference to any other issue.

2. Leave to a private relator to file an information in the nature of a
*quo warranto* under How. Stat. § 8662 (sec. 2), should not be
granted without a responsible showing of relator's rights in the
premises.

3. The following general propositions relating to the practice in *quo
warranto* cases are summarized from the opinion of Mr. Justice
CAMPBELL:

*a*—How. Stat. § 8662 (sec. 2), was evidently designed to allow
the courts to permit suits to determine private rights of relators
on a proper showing, without bringing in the representative of
the public, and therefore without binding the public by the judg-
ment.

*b*—The statutory relation by a *private* claimant of office is a
purely *private* litigation, and is substantially a civil proceeding
in which the plaintiff (relator) has the burden of the controversy.

*c*—No private citizen has any right to compel an officer to show
title until he has shown his own right in the first place to attack
it, and in such a controversy it is manifest that a plea showing
that relator has no rights is as appropriate as one setting up title
in the respondent.

*d*—Either party has the right to bring error to this Court on
his own account, but this is simply because the rights of the peo-
ple are not affected by it, and whichever party prevails the peo-
ple are not estopped by the judgment.

Error to Wayne.    (Full bench.)    Argued February 1, 1888.
Decided March 2, 1888.

Information in the nature of a *quo warranto,* filed under How. Stat. § 8662 (sec. 2). Relator brings error from judgment dismissing writ. Affirmed. The facts are stated in the opinion.

*F. A. Baker* (*Moses Taggart,* Attorney General, of counsel), for relator.

*George H. Prentis* ( *William P. Wells,* of counsel), for respondent.

CAMPBELL, J. This is a proceeding on behalf of a private relator, who got leave to file an information in the nature of a *quo warranto* against respondent to attack his title as superintendent of the poor of Wayne county. Relator does not claim to hold any title himself to the office, except as asserting a right to hold over under an old appointment, because of a supposed defect in Michie's title.

The relator sets up his own title, as derived from an appointment in 1882, to continue until December 31, 1885, the appointment being made by the Wayne county board of auditors. The information does not point out the defect supposed to exist in respondent's title, but simply denies its validity.

Respondent pleaded several pleas, one being his own title as appointed by the county auditors, and another setting up that relator was a supervisor, and by law disqualified from receiving 'the appointment. Subsequent replications and rejoinders were filed concerning respondent's title, but no issue of fact was made as to relator's disqualification as supervisor, but that defense was demurred to. Demurrers were also filed to some of the other pleadings, and upon the demurrers judgment was given against relator and for respondent.

Before referring to these various issues, some reference is necessary to the practice. Until a few years since, no pro-

ceeding in the nature of a *quo warranto* could be had except in this Court. No one could file an information but the Attorney General, and no one else could control the proceedings. In some cases against corporations he could only file it after leave granted by this Court, which has never been granted without notice to the respondent, and a sufficient showing by positive affidavits of facts rendering it proper. The proceeding in such cases is never treated as a matter of right. *Attorney Gen. v. Railroad Co.*, 55 Mich. 15 (20 N. W. Rep. 696). In the case of an information for intrusion upon an office the statute gave him right to file it without leave, but the Court has discretion to proceed to judgment or not, according as the public interests do or do not require it, and will not do so where no good end will be subserved by it. The Attorney General is authorized in such a proceeding to add to the information a suggestion that a relator is entitled to the office, and this question is tried independently of defendant's title, which may be good or bad, and which may be divested, although the relator fails, which has several times happened in this Court. Generally, where the contest is over an elective office, the facts which show defendant to be wrongfully in, show who should fill the place. But, in case of tenure by appointment, this will seldom appear, and the relator must in such case have the burden of showing his own title affirmatively. It cannot be shown by default or agreement of defendant. This subject was recently explained in *Frey v. Michie*, 68 Mich. 323 (36 N. W. Rep. 184). It has always been held that in this Court the interests of the people must be represented by the Attorney General, and in *Babcock v. Hanselman*, 56 Mich. 27 (22 N. W. Rep. 99), it was held that an information prosecuted officially in the circuit court by the prosecuting attorney could not be brought here except by the Attorney General, who cannot depute his public power to any one else.

A few years since, in 1861, a qualified jurisdiction was

vested in the circuit courts, and proceedings' can be begun there to try titles to office on behalf of the public by the Attorney General or prosecuting attorney of his own motion, or by a private relator on leave granted. How. Stat. § 8662, sec. 2. This is the first statutory authority for private action. The statute on the subject does not contain specific directions concerning the general practice in such cases, but it evidently was designed to allow the courts to permit suits to determine the private rights of relators on a proper showing, without bringing in the representative of the public, and therefore without binding the public by the judgment. There is nothing in the statute indicating that the relator is to represent the public. This would be contrary to all of our system of public prosecutions and suits on behalf of the people. The statute provides no means of intervention in such cases to save the public interests, which it would be dangerous to leave subject to private handling. The statutory relation by a private claimant of office is a purely private litigation, and is substantially a civil proceeding in which the plaintiff has the burden of the controversy. No private citizen has any right to compel an officer to show title until he has shown his own right in the first place to attack it.

In such a controversy it is manifest that a plea showing that relator has no rights is as appropriate as one setting up title in the respondent. Either, if established, is a complete defense.

The pleadings in the present case are not very carefully drawn, but the plea setting up relator's incapacity to hold this office, because the statute expressly forbids a supervisor to hold it (How. Stat. § 1772), raised a distinct issue and required a reply. Relator demurred and did not reply. The plea was good in substance, and, so far as we see, in form, but the demurrer was general, and no defect was pointed out. This demurrer being without foundation, respondent was entitled to judgment against relator without reference to any

other issue, and the judgment in his favor cannot be disturbed.

This is sufficient to dispose of the case; but, as this is the first instance of proceedings by a private relator, it is only proper to remark on some peculiarities of the present record. We have no doubt of the right of either party to bring error to this Court on his own account, but this is simply because the rights of the people are not affected by it, and whichever party prevails the people are not estopped by the judgment. But the statute, which requires leave to be obtained before filing the information, does not contemplate that leave shall be granted without some showing, as it was in this case. In this respect the statute has adopted the practice in substance which has always prevailed where leave is granted to relators to file this class of informations. Courts can never act unless upon some responsible showing, and, as it is contrary to public policy to allow persons to be needlessly annoyed by vexatious claims, the statute which has long existed in England, while it allows the public representative, who is the attorney general, or some other high official, to proceed *ex officio*, does not, as construed, permit a relator to proceed without exacting a very precise and positive showing. It has been held by the king's bench that a chief object in requiring leave is to prevent vexatious prosecutions; and the rule is inflexible that there must be affidavits so full and positive from persons knowing the facts as to make out a clear case of right in such a way that perjury may be brought if any material allegation is false. *Rex v. Harwood*, 2 East, 180; *Rex v. Sargent*, 5 Term R. 469; 1 Cole, Crim. Inf. 115; *Rex v. Wardroper*, 4 Burrows, 1964; *Rex v. Dawes*, Id. 2122; *Rex v. Parry*, 6 Adol. & E. 810. The practice also requires that the respondent may have an opportunity of making a counter-showing; and the relator is not allowed to proceed without showing, not merely a good case in law against respondent, but also that public policy will be subserved by

the proceeding. *Rex v. Stacey*, 1 Term R. 2; *Rex v. Mein*, 3 Id. 597; Willcock, Mun. Corp. §§ 378, 379, 397.

In the absence of any public prosecutor, it has always been customary in England to allow prosecutions to be conducted by private complainants, and in some cases a relator is permitted to complain who is not himself entitled to the office, if he has any tangible interest in the matter. This is never allowed in this State in case of public offices. But in other respects the case does not differ here from the English practice, and we may profitably pay regard to it. Before our statutes regulating proceedings in *quo warranto* were passed, the question was raised in this Court whether an information in the nature of a *quo warranto* could be brought at all, and whether the proceeding must not be under the ancient writ of *quo warranto*. But on full argument it was held that the Attorney General could act *ex officio* and file such an information, and a motion to quash it was overruled. *Attorney Gen. v. Railroad Co.* (January term, 1845). It was afterwards deemed proper to legislate on the subject, and his powers were somewhat restricted, as well as regulated, by Rev. Stat. 1846, which have not been materially changed until the law was passed authorizing these proceedings to be brought in the circuit courts.

As no showing was made to obtain leave to file the information in the present case, leave should not have been granted. Had the relator's disability appeared, it must have been denied. As the other facts in the case arise only on pleadings, and may or may not be established, we make no remark on them.

A strong appeal was made to us to pass upon the powers of the board of auditors to appoint to the office of superintendent of the poor. But relator's own claim depended on such an appointment, as appeared by the information, and it is contrary to authority, as well as to good sense, to allow him to controvert it.

But, as we suggested in a recent decision,[1] the power of appointment was expressly vested in the Wayne county auditors before the Constitution of 1850, and no statute has ever taken it away from them. It is not among the constitutional powers of the board of supervisors, and, so far as they exercise it, their power is derived entirely from the statute. So far as we have been enlightened by the argument hitherto made before us, we have seen no reason to doubt the right of the Legislature to vest it where they please, so long as they do not violate some other provision of the Constitution than that relating to supervisors. The whole subject is statutory. As we then declared, we are not disposed to entertain any proceeding at variance with the practical construction of many years that is confined to this particular question, which can easily be settled by legislation if any change is deemed necessary.

It is certainly desirable to have the constitutional limits between the powers of the supervisors and those of the auditors determined in some complete way by legal proceedings or by legislation, so far as that is feasible. There are some questions of great importance and of a practical character that have already arrested public attention. But where powers are purely statutory, they can be better dealt with by the Legislature than by the courts, if they assume consequence.

The judgment below must be affirmed, with costs.

The other Justices concurred.

---

[1] *Frey v. Michie*, 68 Mich. 326.