*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM BAILEY,

　　　　　　Plaintiff-Appellant,

v

ANTRIM COUNTY,

　　　　　　Defendant-Appellee,

and

SECRETARY OF STATE,

　　　　　　Intervening Defendant-Appellee.

FOR PUBLICATION
April 21, 2022
9:20 a.m.

No. 357838
Antrim Circuit Court
LC No. 2020-009238-CZ

Before: CAMERON, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

　　　　Plaintiff William Bailey appeals the trial court's order granting defendant Antrim County and intervening defendant Secretary of State's joint motion for summary disposition. We affirm.

## I. BACKGROUND

　　　　Plaintiff is a resident of Central Lake, Michigan, which is located in Antrim County. On November 3, 2020, plaintiff voted in person in the 2020 election at a polling location in Central Lake Township. On November 6, 2020, the Antrim County Board of Canvassers certified the Antrim County general election results. On November 23, 2020, the State Board of Canvassers certified the election results for the State of Michigan.

　　　　On November 23, 2020, plaintiff filed suit against Antrim County. Plaintiff alleged multiple constitutional claims, including a right to conduct an audit under Const 1963, art 2,

-1-

§ 4(1)(h), and violations of MCL 600.4545(2), MCL 168.765(5), and MCL 168.861. Plaintiff requested that the trial court

> A. issue an order . . . allowing Plaintiff to take a forensic image of the 22 precinct tabulators, thumb drives, related software, the Clerk's "master tabulator," and conduct an investigation of those images.

> B. issue an order allowing Plaintiff to conduct an independent and non-partisan audit to determine the accuracy and integrity of the November 3, 2020 election.

Plaintiff also requested that the trial court issue a protective order and preliminary injunction to "preserve and protect all evidence relevant to th[e] case," including "all 'documents' and 'computer records' used to tabulate votes in Antrim County." Plaintiff also requested that he be permitted to "conduct immediate discovery through a full investigation of the 22 precinct Dominion tabulators" and that he be "permitted to take a forensic image of the 22 precinct tabulators and conduct an investigation of those images, thumb drives, related software, and the Clerk's 'master tabulator.' " Plaintiff also requested that the trial court order Antrim County to not "turn on the Dominion voting machines" or "connect any of the Dominion voting machines . . . to the internet."

Antrim County did "not object to an order requiring it to (a) preserve and protect all records in its possession used to tabulate votes in Antrim County; and (b) not turn on or connect the one (1) Dominion Voting machine (tabulator) in its possession to the internet." According to Antrim County, it was not in possession of the remaining 21 precinct tabulators because they were controlled and owned by "the individual townships." Antrim County argued that plaintiff had failed to provide "any support for his argument that in order to conduct an audit of the November 3, 2020 elections, he must be permitted to take forensic image[s] of the precinct tabulators, thumb drives, related software, and the 'master tabulator.' " Antrim County indicated that plaintiff could request "a manual recount of the paper ballots in Antrim County" and that he would not need "the requested forensic imaging" to do so. The trial court granted plaintiff's motion and held, in relevant part:

> IT IS ORDERED that Antrim County maintain, preserve and protect all records in its possession used to tabulate votes in Antrim County, to not turn on the Dominion tabulator in its possession and to not connect the Dominion tabulator in its possession to the internet.

On December 6, 2020, plaintiff's "forensic team collected forensic images of certain equipment in Antrim County's office, including CF cards, thumb drives, and [a] master tabulator."

On December 17, 2020, a hand recount of the results of the presidential election in Antrim County was conducted. The Michigan Bureau of Elections also conducted statewide audits to confirm the overall accuracy of the November 2020 general election.

The Secretary of State was permitted to intervene over the objection of plaintiff. The parties thereafter engaged in discovery and motion practice. After the close of discovery, defendants jointly moved for summary disposition under MCR 2.116(C)(4) (lack of subject matter

jurisdiction) and (C)(8) (failure to state a claim). Defendants argued that plaintiff's claims were moot, that plaintiff lacked standing to bring several of the claims, and that plaintiff's claims failed as a matter of law. Plaintiff opposed the motion and moved to amend the complaint. Plaintiff also argued that the trial court should permit further discovery before ruling on the motion for summary disposition.

After hearing oral argument, the trial court concluded that plaintiff's claims were moot because plaintiff had already been granted the relief that he sought in the complaint. The trial court further concluded that "[t]here is no right, either in [Const 1963, art 2, § 4(1)(h)] or [MCL 168.31a], for the independent audit that [plaintiff] seeks. A petitioner under Article II, Section 4 does not get to choose his own audit criteria." Rather, the trial court concluded that audits are to be conducted "according to the law" and that an audit had already been conducted. The trial court dismissed plaintiff's claims in a May 2021 order and declined to rule on plaintiff's motion to amend the complaint. This appeal followed.

## II. JURISDICTIONAL ISSUE

At the outset, we must address a jurisdictional issue. Antrim County argues that this Court lacks jurisdiction because the trial court's May 2021 order was not a final order. We disagree.

MCR 7.202(6)(a)(i) defines "final order" as "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties. . . ." In this case, the trial court's May 2021 order granted summary disposition in favor of defendants. Because there was "nothing left for the trial court to decide after it granted summary disposition. . . ," we conclude that the court's May 2021 order was a final order appealable by right. *Rooyakker & Sitz, PLLC v Plante & Moran, PLLC*, 276 Mich App 146, 148 n 1; 742 NW2d 409 (2007). The fact that the trial court may have continued to rule on motions after the May 2021 order was entered does not change the fact that the May 2021 order was a final order.

## III. MOOTNESS

Plaintiff argues that the trial court erred by concluding that his claims were moot. We agree.

"Whether an issue is moot is a question of law that this Court reviews de novo." *In re Tchakarova*, 328 Mich App 172, 178; 936 NW2d 863 (2019). "Michigan Courts exist to decide actual cases and controversies. . . . A matter is moot if [a] Court's ruling cannot for any reason have a practical legal effect on the existing controversy." *Id*. (first alteration in original; quotation marks and citations omitted).

In this case, plaintiff requested that the trial court

> A. issue an order . . . allowing Plaintiff to take a forensic image of the 22 precinct tabulators, thumb drives, related software, the Clerk's "master tabulator," and conduct an investigation of those images.

B. issue an order allowing Plaintiff to conduct an independent and non-partisan audit to determine the accuracy and integrity of the November 3, 2020 election.

While the trial court granted plaintiff some of this relief, it is undisputed that plaintiff did not receive *all* the relief requested in the complaint. Indeed, plaintiff argued that he was personally entitled to perform "an independent and non-partisan audit to determine the accuracy and integrity of the November 3, 2020 election." While plaintiff is not entitled to this relief for the reasons discussed later in this opinion, the fact that plaintiff did not have viable claims does not render them moot. Indeed, a ruling that plaintiff was not permitted under the law to conduct his own independent audit would have had a practical legal effect. Consequently, the trial court erred by determining that plaintiff's claims were moot.[1] Nonetheless, we will not reverse a trial court's decision when it reaches the right result, even if for the wrong reason. *Gleason v Mich Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason."). For the following reasons, we conclude that summary disposition was proper under MCR 2.116(C)(8).[2]

## IV. SUMMARY DISPOSITION UNDER MCR 2.116(C)(8)

### A. STANDARDS OF REVIEW AND GENERAL PRINCIPLES OF LAW

"This Court . . . reviews de novo questions of constitutional law." *Promote the Vote v Secretary of State*, 333 Mich App 93, 117; 958 NW2d 861 (2020). In interpreting constitutional provisions, the primary duty of the judiciary "is to ascertain the purpose and intent as expressed in the constitutional . . . provision in question." *Adair v State*, 486 Mich 468, 477; 785 NW2d 119 (2010) (quotation marks and citation omitted). In doing so, "we are mindful that the interpretation given [to] the provision should be the sense most obvious to the common understanding and one that reasonable minds, the great mass of the people themselves, would give it." *Id.* (quotation marks and citation omitted). "When the language of a constitutional provision is unambiguous, resort to extrinsic evidence is prohibited. . . ." *Nat'l Pride at Work, Inc v Governor*, 481 Mich 56, 80; 748 NW2d 524 (2008).

"We . . . review de novo a trial court's interpretation and application of a statute." *City of Grand Rapids v Brookstone Capital, LLC*, 334 Mich App 452, 457; 965 NW2d 232 (2020). "The primary goal of statutory interpretation is to give effect to the intent of the Legislature. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted." *Mich Head & Spine Institute, PC v Mich Assigned Claims Plan*, 331 Mich App 262, 272; 951 NW2d 731 (2019) (quotation marks and citations

---

[1] Because the mootness doctrine does not apply, we need not consider whether the trial court improperly analyzed whether summary disposition under that doctrine was proper under MCR 2.116(C)(4).

[2] We question whether the relief requested by plaintiff is meaningful because the evidence that plaintiff seeks to gather would only be useful if an avenue remained open for him to challenge the election results.

-4-

omitted). "The use of the word 'shall' denotes mandatory action." *Wolfenbarger v Wright*, 336 Mich App 1, 31; 969 NW2d 518 (2021).

We also review de novo "a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

> A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint. When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone. A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery. [*Id*. at 159-160 (citations omitted).]

## B. ANALYSIS

### 1. CONSTITUTIONAL CLAIMS UNDER CONST 1963, ART 2, § 4

Const 1963, art 2, § 4(1)(h), provides that "[e]very citizen of the United States who is an elector qualified to vote in Michigan shall have" "[t]he right to have the results of statewide elections audited, in such a manner as prescribed by law, to ensure the accuracy and integrity of elections." Const 1963, art 2, § 4(1) further provides:

> All rights set forth in this subsection shall be self-executing. This subsection shall be liberally construed in favor of voters' rights in order to effectuate its purposes. Nothing contained in this subjection shall prevent the legislature from expanding voters' rights beyond what is provided herein.

Plaintiff argues that § 4(1)(h) permits him to have "[a] full [and independent] forensic audit. . . ." While § 4(1)(h) is self-executing and is to be liberally construed in favor of voters' rights, the provision is not unlimited. Indeed, § 4(1)(h) provides that an audit is to be performed "in . . . a manner as prescribed by law. . . ." It does not permit an audit to be performed in the manner dictated by an individual voter, and it clearly provides that *the Legislature* may expand the rights provided in § 4(1)(h). But the Legislature did not do so.

MCL 168.31a, which was amended by 2018 PA 603 after the adoption of the aforementioned audit language, provides:

> (1) In order to ensure compliance with the provisions of this act, after each election the secretary of state may audit election precincts.

> (2) The secretary of state shall prescribe the procedures for election audits that include reviewing the documents, ballots, and procedures used during an election as required in section 4 of article II of the state constitution of 1963. The secretary of state and county clerks shall conduct election audits, including statewide election audits, as set forth in the prescribed procedures. The secretary of state shall train and certify county clerks and their staffs for the purpose of conducting election audits of precincts randomly selected by the secretary of state in their counties. An election audit must include an audit of the results of at least 1

-5-

race in each precinct selected for an audit. A statewide election audit must include an audit of the results of at least 1 statewide race or statewide ballot question in a precinct selected for an audit. An audit conducted under this section is not a recount and does not change any certified election results. The secretary of state shall supervise each county clerk in the performance of election audits conducted under this section.

(3) Each county clerk who conducts an election audit under this section shall provide the results of the election audit to the secretary of state within 20 days after the election audit.

Thus, the Legislature required the Secretary of State to "prescribe the procedures for election audits" and required the Secretary of State and county clerks to conduct the election audits. See MCL 168.31a(2). The statutory language does not allow private citizens to conduct independent audits, and we are not permitted to read words into the plain language of a statute. *Byker v Mannes*, 465 Mich 637, 646-647; 641 NW2d 210 (2002) ("It is a well-established rule of statutory construction that this Court will not read words into a statute."). Because plaintiff is not entitled to conduct his own independent audit, plaintiff's claim under Const 1963, art 2, § 4(1)(h) fails as a matter of law.

We note that, on appeal, plaintiff challenges the constitutionality of MCL 168.31a and argues that a constitutionally sufficient audit was not performed by the Secretary of State. However, plaintiff failed to plead these claims in his complaint,[3] so we will not address plaintiff's arguments on appeal concerning the constitutionality of MCL 168.31a and whether the audit was "constitutionally sufficient. . . ." See *Lenawee Co v Wagley*, 301 Mich App 134, 160; 836 NW2d 193 (2013) ("A party is bound by [his or her] pleadings, and it is not permissible to litigate issues or claims that were not raised in the complaint. . . .") (quotation marks and citations omitted).

Plaintiff's claim under Const 1963, art 2, § 4(2) also fails. That provision provides:

Except as otherwise provided in this constitution or in the constitution or laws of the United States the legislature shall enact laws to regulate the time, place and manner of all nominations and elections, to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting.

In plaintiff's complaint, he alleged that § 4(2) provided him with the right to "immediately take a forensic image of the 22 precinct tabulators, thumb drives, related software, the Clerk's 'master tabulator,' and to conduct an investigation of these images. . . ." Plaintiff alleged that this relief was proper in order to "ensure the accuracy and integrity of the election." While § 4(2) is certainly aimed at preserving the "purity of elections," it does not provide plaintiff with a cause of action. Rather, it serves as a directive to the Legislature to create laws to preserve "the purity of elections. . . ." See *Taylor v Currie*, 277 Mich App 85, 96; 743 NW2d 571 (2007) ("The Michigan

_____

[3] Although plaintiff later sought to add this claim, it would not have been proper for the trial court to permit plaintiff to amend the complaint for the reasons discussed later in this opinion.

-6-

Supreme Court has interpreted 'the purity of elections' clause to embody two concepts: first, that the constitutional authority to enact laws to preserve the purity of elections resides in the Legislature; and second, that any law enacted by the Legislature which adversely affects the purity of elections is constitutionally infirm.") (quotation marks and citations omitted). Because plaintiff's complaint does not allege that the Legislature enacted laws that adversely affect the purity of elections and because Const 1963, art 2, § 4(2) does not create an individual right to conduct an audit, plaintiff's claim under Const 1963, art 2, § 4(2) fails as a matter of law.

## 2. QUO WARRANTO

Plaintiff next argues that the trial court erred by dismissing his quo warranto claims.[4] We disagree. The Court in *Hanlin v Saugatuck Twp*, 299 Mich App 233, 240-241; 829 NW2d 335 (2013) explained,

> Quo warranto is a " 'common-law writ used to inquire into the authority by which a public office is held or a franchise is claimed.' " *Davis v Chatman*, 292 Mich App 603, 612; 808 NW2d 555 (2011), quoting Black's Law Dictionary (9th ed). . . . Generally such actions are brought pursuant to MCL 600.4505—which echoes the procedure of MCR 3.306(B)(2)—and are pursued against a person in public office by one who seeks to challenge that person's right to hold office, but no assertions are made of fraud or error. [*Barrow v Detroit Mayor*, 290 Mich App 530, 541; 802 NW2d 658 (2010).] MCL 600.4545(1), on the other hand, provides for an action in the nature of quo warranto "whenever it appears that material fraud or error has been committed at any election in such county at which there has been submitted any constitutional amendment, question, or proposition to the electors of the state or any county, township, or municipality thereof." This type of action is brought to challenge the validity of the election itself. *Barrow*, 290 Mich App at 543. Thus, to pursue an action for quo warranto to challenge the validity of the election, [a] plaintiff[ ] must establish that a material fraud or error was committed at the election.

Turning to the allegations in plaintiff's complaint, plaintiff alleged a violation of MCL 168.861 and asserted that an "action may be brought to remedy fraudulent or illegal voting or tampering with ballots or ballot boxes before a recount pursuant to MCL 168.861. . . ."[5] However, MCL 168.861 does not provide plaintiff with an independent cause of action. See *Hanlin*, 299 Mich App at 242 ("MCL 168.861 was intended as a saving clause rather than an independent cause

---

[4] We note that a citizen must obtain leave of the trial court before proceeding with a claim for quo warranto. MCR 3.306(B)(3)(b). In this case, rather than determining whether plaintiff should be granted leave to proceed by quo warranto, the trial court decided plaintiff's claims for quo warranto under summary disposition standards.

[5] MCL 168.861 provides that, "[f]or fraudulent or illegal voting, or tampering with the ballots or ballot boxes before a recount by the board of county canvassers, the remedy by quo warranto shall remain in full force, together with any other remedies now existing."

of action."). Thus, the trial court properly dismissed plaintiff's quo warranto claim brought under MCL 168.861.

With respect to plaintiff's quo warranto claim that was brought under MCL 600.4545, MCL 600.4545(1) provides for an action in the nature of quo warranto "whenever it appears that material fraud or error has been committed at any election in such county at which there has been submitted any constitutional amendment, question, or proposition to the electors of the state or any county, township, or municipality thereof."

> The phrase "material fraud or error" in MCL 600.4545(1) "means fraud or error that 'might have affected the outcome of the election.' " *Barrow*, 290 Mich App at 542, quoting *St Joseph Twp v City of St Joseph*, 373 Mich 1, 6; 127 NW2d 858 (1964). While a "but for" showing is not necessary, the plaintiff's "proofs must be sufficient to support a fact finding that enough votes were tainted by the alleged fraud to affect the outcome." *Barrow*, 290 Mich App at 542. See also *Rosenbrock v Sch Dist No. 3, Fractional*, 344 Mich 335, 339; 74 NW2d 32 (1955) ("It has been repeatedly held by this Court that irregularities in the conducting of an election will not invalidate the action taken unless it appears that the result was, or may have been, affected thereby."). [*Hanlin*, 299 Mich App at 243.]

In this case, plaintiff's complaint repeatedly cites to the votes that were tallied in Antrim County in relation to the presidential election. As already stated, MCL 600.4545(1) provides for an action in the nature of quo warranto "whenever it appears that material fraud or error has been committed at any election in such county at which there has been submitted any constitutional amendment, question, or proposition to the electors of the state or any county, township, or municipality thereof." There are no allegations in the complaint to support that the purported irregularities in Antrim County "might have affected the outcome" of the presidential election, as the cited case law clearly requires. See *Barrow*, 290 Mich App at 542 (in order to establish a quo warranto claim, a plaintiff must establish that the purported fraud or error "might have affected the outcome of the election").

To the extent that plaintiff is challenging the results of the state, county, or township election, we agree with defendants that summary disposition was proper on those claims as well because plaintiff failed to sufficiently plead the claim.

> MCR 3.301(A)(1)(d) and (2) "govern the procedure for seeking the writs or relief formerly obtained by the writs," including a writ of quo warranto. In that regard, MCR 3.301(A)(3) provides that "[t]he general rules of procedure apply except as otherwise provided in this subchapter." MCR 2.111(A)(1) requires that allegations made in a pleading be clear, concise, and direct. MCR 2.112(B)(1) requires that fraud and mistake be pleaded with particularity. Other matters, including malice, intent, and knowledge, can be pleaded generally under MCR 2.112(B)(2). MCR 3.301 does not otherwise contain pleading requirements for a petition for leave to proceed by quo warranto. Nonetheless, our Supreme Court has held that an application for leave to file an action for quo warranto "should be so clear and positive in its statement of facts as to make out a clear case of right; and should be so framed as to sustain a charge of perjury if any material allegation is

-8-

false." *Boucha v Alger Circuit Judge*, 159 Mich 610, 611; 124 NW 532 (1910), citing *Cain v Brown*, 111 Mich 657, 660; 70 NW 337 (1897); see also *Vrooman v Michie*, 69 Mich 42, 46; 36 NW 749 (1888). [*Barrow*, 290 Mich App at 543-544.]

In this case, plaintiff alleged in his complaint, in relevant part:

29. *There are many other questions that remain unanswered*, including but not limited to (1) whether the Dominion tabulators in Antrim County were tampered with, (2) whether they have the capacity to connect to the internet, (3) whether they had any open VPN ports during the election, (4) if connected to the internet, was the connection secure, (5) whether the machines were accessed via the use of removable media to transfer voting information, (6) whether the ballot images were preserved in every precinct per federal and state election law, (7) whether the audit logs were preserved and synchronized, (8) whether the audit logs were altered or edited by any person operating the system, (9) whether Dominion pre-loaded any algorithms and configurations on the machines that alter the results, and if so, what algorithms and configurations were pre-loaded, and (10) whether the "purge option" that is built into Dominion utilized to cancel, switch, or manipulate votes, in the same way it has historically been utilized in Venezuela and Cuba.

30. *Plaintiff and others seek to learn the answers to these questions*, including why Defendant [Antrim County] initially registered "phantom voters" for Presidential Candidate Joe Biden and why the Dominion machines altered and switched votes for him.

\* \* \*

49. Based upon the *allegations* contained herein, material fraud or error occurred in this election so that the outcome of the election was affected.

50. Based upon the above *allegations* of fraud, statutory violations, and other misconduct, as stated herein, it is necessary to permit Plaintiff to immediately take a forensic image of the 22 precinct tabulators[,] thumb drives, related software, and the Clerk's "master tabulator," and *conduct an investigation of those images*, after which a manual recount of the election results and an independent audit of the November 3, 2020 election may be ordered to ensure the accuracy and integrity of the election. [Emphasis added.]

We conclude that plaintiff failed to allege any "clear and positive" factual allegations that "make out a clear case of right. . . ." See *Barrow*, 290 Mich App at 543-544 (quotation marks and citations omitted). Instead, plaintiff merely raised a series of questions about the election without making any specific factual allegations as required. Because plaintiff "failed to disclose sufficient facts and grounds and sufficient apparent merit to justify further inquiry by quo warranto proceedings," the trial court properly granted summary disposition. See *id*. at 550.

3. EQUAL PROTECTION CLAIM

Plaintiff next argues that the trial court erred by granting summary disposition on his equal protection claim. We disagree.

"The equal protection clauses of the Michigan and United States constitutions provide that no person shall be denied the equal protection of the law." *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 318; 783 NW2d 695 (2010). The purpose of the equal protection guarantee is to secure every person "against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v Olech*, 528 US 562, 564; 120 S Ct 1073; 145 L Ed 2d 1060 (2000).

Plaintiff alleged in the complaint that he was deprived of his constitutional right to vote in the November 2020 election due to Antrim County's "rampant and systematic fraud," which resulted in his vote not being "valued." However, plaintiff failed to plead allegations to support that he was intentionally and arbitrarily discriminated against as a result of Antrim County's "improper execution" of a statute through its "duly constituted agents," *id.*, or that Antrim County failed to implement the minimum procedures necessary to protect the fundamental right of each voter, Cf. *Bush v Gore*, 531 US 98, 109; 121 S Ct 525; 148 L Ed 2d 388 (2000). Rather, as already stated, plaintiff made generalized assertions to the trial court that election fraud occurred and that he should be provided with discovery in order to determine the extent of the fraud. Additionally, plaintiff did not allege that he was treated differently than similarly situated individuals, which is necessary to establish an equal protection claim. See *Nordlinger v Hahn*, 505 US 1, 10; 112 S Ct 2326; 120 L Ed 2d 1 (1992) ("The Equal Protection Clause . . . keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."). Consequently, plaintiff's equal protection claim fails as a matter of law.[6]

## V. THE TRIAL COURT'S CONSIDERATION OF DOCUMENTARY EVIDENCE AND INADMISSIBLE HEARSAY

Plaintiff argues that the trial court improperly considered documentary evidence and inadmissible hearsay evidence when deciding the motion for summary disposition.[7] We need not consider this argument, however, given that summary disposition was proper under MCR 2.116(C)(8) for the reasons already discussed. See *El-Khalil*, 504 Mich at 159 ("A motion under

---

[6] Plaintiff's complaint also contained an allegation that Antrim County violated MCL 168.765(5). Plaintiff does not argue on appeal that the trial court erred by dismissing this claim. Therefore, we will not address it.

[7] Although the trial court referenced the Secretary of State's press releases concerning the election, the trial court did so when evaluating whether plaintiff's claims were moot under MCR 2.116(C)(4).

MCR 2.116(C)(8) tests the legal sufficiency of a claim based [only] on the factual allegations in the complaint.") (emphasis omitted).

## VI. THE TRIAL COURT'S ALLEGED PREMATURE GRANT OF SUMMARY DISPOSITION

Plaintiff next argues that summary disposition was premature because several depositions had not yet been conducted.[8] While it is true that a trial court is not permitted to grant summary disposition under MCR 2.116(C)(10) when the opposing party establishes that "further discovery stands a fair chance of uncovering factual support for the opposing party's position," *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009), summary disposition in this case was proper under MCR 2.116(C)(8). Thus, permitting plaintiff to complete the scheduled depositions would have been futile. Based on this conclusion, it is not necessary to consider plaintiff's argument that the trial court abused its discretion when it denied plaintiff's motion to adjourn oral argument on defendants' motion for summary disposition.

## VII. PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

Finally, plaintiff argues that the trial court improperly failed to consider his motion to amend the complaint. We conclude that it would have been improper for the trial court to grant leave to amend the complaint.

MCR 2.116(I)(5) requires a trial court to "give the parties an opportunity to amend their pleadings as provided by MCR 2.118" if the grounds for summary disposition are based on MCR 2.116(C)(8) "unless the evidence then before the court shows that amendment would not be justified." "[L]eave [to amend] should ordinarily be denied only for particularized reasons such as undue delay, bad faith or dilatory motive, repeated failures to cure by amendments previously allowed, or futility." *Decker v Rochowiak*, 287 Mich App 666, 681-682; 791 NW2d 507 (2010) (quotation marks and citation omitted). With respect "to undue delay, delay, alone, does not warrant denial of a motion to amend. However, a court may deny a motion to amend if the delay was in bad faith or if the opposing party suffered actual prejudice as a result." *Id*. (alteration, quotation marks, and citation omitted). "Prejudice to a defendant that will justify denial of leave to amend arises when the amendment would prevent the defendant from having a fair trial." *Knauff v Oscoda Co Drain Comm'r*, 240 Mich App 485, 493; 618 NW2d 1 (2000). Importantly, "[t]he prejudice must stem from the fact that the new allegations are offered late and not from the fact that they might cause the defendant to lose on the merits." *Id*.

We conclude that prejudice would have resulted if the trial court had permitted plaintiff to amend the complaint. On November 23, 2020, plaintiff filed the original six-count complaint against Antrim County. Shortly thereafter, the trial court entered the protective order and

---

[8] Although discovery had already closed at the time the trial court decided defendants' joint motion for summary disposition, plaintiff had yet to take several depositions. The trial court permitted the depositions to be conducted after the close of discovery.

-11-

preliminary injunction. The Secretary of State was permitted to intervene over the objection of plaintiff, and the parties thereafter engaged in discovery and motion practice.

On April 9, 2021, defendants jointly moved for summary disposition. Plaintiff filed a response to this motion on May 3, 2021. On that same date, plaintiff moved the trial court for leave to file a first-amended complaint. The proposed first-amended complaint was 81 pages and lists the following defendants: (1) Antrim County, (2) Jocelyn Benson, in her individual capacity and her official capacity as Secretary of State, (3) Jonathan Brater, in his individual capacity and official capacity as Michigan's Director of Elections, (4) Sheryl Guy, in her individual capacity and official capacity as the Clerk of Antrim County, (5) Miller Consultations & Elections, Inc., d/b/a Election Source, and (6) Central Lake Township. The proposed first-amended complaint contains 13 counts, including a count that challenges the constitutionality of MCL 168.31a. The proposed first-amended complaint also alleges that the proposed defendants engaged in multiple constitutional and statutory violations and that they engaged in fraud and civil conspiracy. Plaintiff also sought to challenge certain election results and to obtain injunctive relief, declaratory relief, monetary damages, fees, and costs.

Thus, plaintiff sought to add significant factual allegations and theories of liability against new parties. Not only did plaintiff seek to add new parties and new claims, plaintiff filed the motion to amend the complaint after the close of discovery and after defendants had moved for summary disposition. Also, a bench trial had been scheduled for June 2021, and the trial court had indicated that it would not grant adjournments. The record also supports that plaintiff was aware of the above-named potential defendants and the facts contained in the proposed amended complaint long before the May 2021 motion to amend was filed. Because the proposed defendants would be unable to have a fair trial, we conclude that prejudice would have resulted if plaintiff had been permitted to amend the complaint. See *Weymers v Khera*, 454 Mich 639, 659-660; 563 NW2d 647 (1997) (factors like whether the plaintiff is seeking "to add a new claim or a new theory of recovery on the basis of the same set of facts, after discovery is closed, just before trial," support a finding of prejudice). Additionally, review of the proposed first-amended complaint supports that permitting amendment of some of the claims would have been futile. Consequently, even if the trial court had considered the motion, it would have been improper for the trial court to permit amendment of the complaint.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola

-12-