*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

MONROE COUNTY and MONROE COUNTY
BOARD OF COMMISSIONERS,

   Plaintiffs-Appellees/Cross-Appellants,

v

MARK BRANT,

   Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
February 06, 2026
12:23 PM

No. 377362
Monroe Circuit Court
LC No. 25-149230-CZ

---

MARK BRANT,

   Plaintiff-Appellant/Cross-Appellee,

v

MONROE COUNTY BOARD OF
COMMISSIONERS,

   Defendant-Appellee/Cross-Appellant.

No. 377372
Monroe Circuit Court
LC No. 25-149222-CZ

---

Before: FEENEY, P.J., and REDFORD and MARIANI, JJ.

PER CURIAM.

These consolidated, election-related appeals arise out of two consolidated actions below—one initiated by Mark Brant against Monroe County Board of Commissioners (the "Board"); and the other by Monroe County (the "County") and the Board (collectively, "cross-appellants")

-1-

against Brant. Both appeals were initiated by a single claim of appeal filed by Brant,[1] in which he sought to challenge the trial court's September 12, 2025 order. The Board and the County later filed claims of cross appeal.

As we will explain in more detail below, although the September 12, 2025 order appealed did not resolve all of the parties' pending claims, and is thus not a "final" order appealable as of right, we exercise our discretion to treat the parties' claims of appeal as granted applications for leave to appeal. However, because of the procedural stance of these cases—particularly the fact that both actions were neither captioned nor argued as actions seeking relief in the form of quo warranto—we are unable to give the parties what they all seem to desire: a definitive ruling as to who currently holds the disputed seat. Instead, we vacate the trial court's September 12, 2025 order in these actions and remand these matters to that court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

By way of background, this case arises out of a dispute over whether Brant currently remains an elected member of the Board—a seat to which he was elected in November 2024—or instead vacated that position when he was sent to federal prison in a sister state later that same month. Paradoxically, although the November 4, 2025 election at issue in this case was a special election intended to fill Brant's allegedly vacant seat on the Board, he was certified as a candidate in that race and appeared on the ballot. By the time that Brant first sought review in this Court on September 17, 2025, the ballots were already in the process of being finalized, printed, and at least partially distributed, as required by statute.[2] As such, even if Brant had named the proper election officials as parties in his complaint below and sought a writ of mandamus against them (as discussed further *infra*, he did neither), by the time this matter came before this Court, it was already highly unlikely that the Court would have been able to take any action to prevent the special election from occurring.

In any event, while expediting these appeals on the Court's own motion, this Court previously directed the parties to, among other things,

---

[1] Because the parties and party designations differed in the two consolidated actions below, there are two different docket numbers in this Court. See IOP 7.204-2 ("If a claim of appeal is filed that lists more than one lower court or tribunal number and has different parties, separate docket numbers will be assigned (corresponding to each of the lower court or tribunal numbers). Multiple numbers are assigned in such cases to allow for preparation of the correct title for each case.").

[2] See MCL 168.759a(5) ("Not later than 45 days before an election, a county, city, or township clerk shall electronically transmit or mail as appropriate an absent voter ballot to each absent uniformed services voter or overseas voter who applied for an absent voter ballot 45 days or more before the election."); MCL 168.713 ("[A]bsent voter ballots shall be delivered to the county clerk at least 47 days before any election or primary election.").

analyze the following jurisdictional issues in their briefs on appeal: (1) whether the September 12, 2025 order appealed adjudicated "all the claims . . . of all the parties" for purposes of MCR 7.202(6)(a)(*i*), or otherwise qualifies as a "final order," as defined under MCR 7.202(6); and (2) if the order appealed does not qualify as a final order appealable as of right, whether this Court should exercise its discretion to treat appellant's claim of appeal as an application for leave to appeal, then grant leave and reach the merits of the issues raised here.  See, e.g., *Wardell v Hincka*, 297 Mich App 127, 133 n 1; 822 NW2d 278 (2012).[3]

Later, after reviewing the parties' initial briefs on appeal, we ordered supplemental briefing as follows:

> On the Court's own motion pursuant to MCR 7.216(A)(7) and (A)(9), and in light of *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 399; 651 NW2d 756 (2002) ("a court is continually obliged to question sua sponte . . . the limits of the relief it may afford"), the parties are DIRECTED to submit supplemental briefs addressing the following issues: (1) whether the fundamental question raised here—i.e., whether Mark Brant's disputed seat was vacated as a result of his conviction and incarceration or whether, instead, he remains a sitting county commissioner—is properly before the Court, given that "quo warranto is the proper and *exclusive* remedy to try title to office finally and conclusively," *Layle v Schnipke*, 384 Mich 638, 641; 186 NW2d 559 (1971) (emphasis added); (2) whether an *injunction* against the sole defendant named in Brant's complaint below—Monroe County Board of Commissioners—would [have been] a proper remedy, at th[at] juncture [i.e., in late October 2025], to prevent the disputed November 4, 2025 special election, see *Attorney General v Bd Of State Canvassers*, 318 Mich App 242, 248; 896 NW2d 485 (2016) ("*Mandamus* is the appropriate remedy for a party seeking to compel action by *election officials*.") (emphasis added); and (3) any other issues the parties may [have deemed] relevant in light of this order.[4]

The special election has since taken place, and because it is a matter of public record and appears to be undisputed, we take judicial notice of the result: the winner was nonparty Dale Biniecki.  See *Gleason v Kincaid*, 323 Mich App 308, 314 n 1; 917 NW2d 685 (2018) (holding that this Court may take judicial notice of election results, given that they are a matter of public

---

[3] *Monroe County v Brant*, unpublished order of the Court of Appeals, entered September 23, 2025 (Docket No. 377362); *Brant v Monroe Co Bd of Comm'rs*, unpublished order of the Court of Appeals, entered September 23, 2025 (Docket No. 377372).

[4] *Monroe County v Brant*, unpublished order of the Court of Appeals, entered October 23, 2025 (Docket No. 377362) (some alterations added; emphases in original); *Brant v Monroe Co Bd of Comm'rs*, unpublished order of the Court of Appeals, entered October 23, 2025 (Docket No. 377372) (some alterations added; emphases in original).

record).  Having now reviewed the parties' briefs and supplemental briefs, we turn to the merits—or, at least, to the issues that are properly reviewable at this juncture.

## II.  ANALYSIS

### A.  STANDARDS OF REVIEW AND PRINCIPLES OF CONSTRUCTION

We review de novo questions of law.  *Secura Ins Co v Stamp*, 341 Mich App 574, 579; 991 NW2d 244 (2022).  Such questions include those involving a court's jurisdiction, the proper interpretation and application of both court rules and statutes, and "the application of legal doctrines[.]"  *Estes v Titus*, 481 Mich 573, 578; 751 NW2d 493 (2008).  The gravamen, or true essence, of a given claim is also a question of law, see *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 11; 930 NW2d 393 (2018), as is "whether equitable relief is proper" under a given set of circumstances, *Gleason*, 323 Mich App at 317.  On the other hand, this Court generally reviews a trial court's decision to grant an injunction, which is one *form* of equitable relief, for an abuse of discretion.  *Dep't of Environmental Quality v Gomez*, 318 Mich App 1 n 12, 34; 896 NW2d 39 (2016).  "A trial court abuses its discretion when it chooses an outcome falling outside the range of reasonable and principled outcomes, or when it makes an error of law."  *Planet Bingo, LLC v VKGS, LLC*, 319 Mich App 308, 320; 900 NW2d 680 (2017) (quotation marks and citation omitted).  Any related factual findings are reviewed for clear error, *Gleason*, 323 Mich App at 317, which will be found "when this Court is left with the definite and firm conviction that a mistake was made," *In re Contempt of Henry*, 282 Mich App 656, 669; 765 NW2d 44 (2009).

As our Supreme Court explained in *Sun Valley Foods Co v Ward*, 460 Mich 230, 236-237; 596 NW2d 119 (1999):

> The rules of statutory construction are well established.  The foremost rule, and our primary task in construing a statute, is to discern and give effect to the intent of the Legislature.  This task begins by examining the language of the statute itself.  The words of a statute provide the most reliable evidence of its intent[.]  If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written.  No further judicial construction is required or permitted.  Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent.
>
> In interpreting the statute at issue, we consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme.  As far as possible, effect should be given to every phrase, clause, and word in the statute.  [Quotation marks and citations omitted.]

"A provision of a statute is ambiguous only if it irreconcilably conflicts with another provision or is equally susceptible to more than a single meaning."  *Bedford Pub Sch v Bedford Ed Ass'n MEA/NEA*, 305 Mich App 558, 565; 853 NW2d 452 (2014).

"Statutes that relate to the same subject or that share a common purpose are *in pari materia* and must be read together as one law, even if they contain no reference to one another and were enacted on different dates."  *Walters v Leech*, 279 Mich App 707, 709-710; 761 NW2d 143 (2008).

"The object of the *in pari materia* rule is to give effect to the legislative intent expressed in harmonious statutes. If statutes lend themselves to a construction that avoids conflict, that construction should control." *Id*. at 710 (citations omitted).

"The rules of statutory construction apply to the construction of court rules," as well. *Hill v LF Transp, Inc*, 277 Mich App 500, 507; 746 NW2d 118 (2008).

## B. APPELLATE JURISDICTION

The parties have taken different positions on the jurisdictional question that they were asked to brief. Cross-appellants, Monroe County and the Monroe County Board of Commissioners, have conceded that the trial court's September 12, 2025 order is not a final order appealable as of right, but they ask us to exercise our discretion to reach the merits by treating these claims of appeal (and cross-appeal) as granted applications for leave to appeal. On the other hand, Brant argues that the September 12, 2025 order *does* constitute a "final" order, appealable as of right, simply because the trial court *labeled* it as such.

Cross-appellants are correct that the September 12, 2025 order does not qualify as a "final" order from which the parties were entitled to claim an appeal of right. As settled precedent makes clear, an order designated as "final" by a trial court may nevertheless not *be* a "final" order for purposes of determining whether this Court has appellate jurisdiction. See, e.g., *Faircloth v Family Independence Agency*, 232 Mich App 391, 400; 591 NW2d 314 (1998); accord *Knier, Powers, Martin, & Smith, LLC v City of Bay City*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 366114); slip op at 3.[5] In this instance, the trial court never adjudicated at least one of the claims asserted in each of the actions below—namely, Brant's claim asking for a declaratory judgment that the Board's conduct had violated Const 1963, art 2, § 1, and cross-appellants' claim asking for a declaration that Brant is not entitled "to compensation of salary and benefits" for his alleged service as an elected commissioner while he was incarcerated in another state. Consequently, this Court lacks jurisdiction over these appeals when viewed as claims of appeal by right. See MCR 7.202(6)(a)(*i*); MCR 7.203(A).

We nevertheless have discretion to treat these claims of appeal as granted applications seeking interlocutory review. See, e.g., *Wardell*, 297 Mich App at 133 n 1. Here, all of the parties have asked us to exercise that discretion. And given the nature of this case and the public interests at stake, we grant their request. Thus, for jurisdictional purposes, we will treat the instant claims of appeal as applications for leave to appeal and grant them both.

## C. FACTORS THAT CURRENTLY HINDER APPELLATE REVIEW

Our ability to reach the substantive merits of the ultimate question posed here is significantly hindered at this juncture. At their roots, the parties' claims in these actions—and their respective requests for injunctive and declaratory relief—almost all depend on the answer to one fundamental question: whether Brant's seat was vacated as a result of his conviction and

---

[5] Oral argument on the application granted on other grounds ___ Mich ___; 20 NW3d 585 (2025).

incarceration in another state or whether, instead, he remains a sitting county commissioner. For a variety of reasons, a definitive ruling on that issue is simply not possible at this time.

To begin with, to the extent that the parties seek a ruling on who currently holds title to the disputed seat, they have not requested the proper relief—quo warranto—or even attempted to comply with the associated procedural hurdles set forth under MCR 3.306. "Numerous decisions of [our Supreme] Court hold that quo warranto is the proper and *exclusive* remedy to try title to office finally and conclusively." *Layle v Schnipke*, 384 Mich 638, 641; 186 NW2d 559 (1971) (emphasis added). Accord *Gildemeister v Lindsay*, 212 Mich 299, 303; 180 NW 633 (1920); *Okrie v Michigan*, 306 Mich App 445, 465; 857 NW2d 254 (2014)

Additionally, we are not persuaded by the parties' respective arguments that their failure to seek relief in the form of quo warranto below is a harmless procedural error that can be ignored on appeal. The relevant procedural requirements for pursuing a quo warranto action are primarily set forth under MCR 3.306(B), which requires some actions for quo warranto to be pursued by the Attorney General or, on leave of the court, by a person who has been unsuccessful in petitioning the Attorney General to pursue such an action. That same rule provides that certain "[o]ther actions for quo warranto may be brought by the prosecuting attorney of the proper county, without leave of court, or by a citizen of the county by special leave of the court." MCR 3.306(B)(2). Which of those procedural hurdles applies in this instance may well depend on the proper interpretation of the phrase "an office in a public corporation created by this state's authority," as that phrase is used in MCR 3.306(B)(1)(b). See *Gallagher v Keefe*, 232 Mich App 363, 367; 591 NW2d 297 (1998) ("This case, which concerns plaintiff's allegation that defendant wrongfully holds or exercises office, would be a case within the purview of those assigned to the Attorney General provided that Ingham County is within the definition of a 'public corporation created by this state's authority,' as the phrase is used in MCR 3.306(B)(1)(b). Courts have not yet resolved the parameters of this definition."). But, as was true in *Gallagher*, 232 Mich App at 367, we need not resolve that question here. Because the parties did not seek relief in the form of quo warranto below, they never attempted to comply with any of MCR 3.306(B)'s procedural requirements.

And given the nature of this dispute, which regards an elected public office, that failure is not one that can be merely glossed over or overlooked. On the contrary, MCR 3.306(B)'s pertinent requirements appear to be part of our Supreme Court's attempt to promulgate court rules consistent with the common-law doctrine that, because a determination of who holds title to an elected public office necessarily impacts important public interests, quo warranto actions cannot be "controlled" by private parties alone. See, e.g., *Frey v Michie*, 68 Mich 323, 328; 36 NW 184 (1888) ("[T]here is no rule of law which will allow the title to office to be tried in a private controversy controlled by individuals. Under our system, while a private person may have a valuable interest in an office, we have always treated it as a public trust in which the public interest is paramount. Although a relator may be brought into the record in quo warranto cases as a claimant of office, yet he is not a necessary party, and has no control over the litigation."). Indeed, without first satisfying the procedural requirements of MCR 3.306, the parties lack standing to pursue an action for quo warranto at all. See *Gallagher*, 232 Mich App at 368, citing *Ballenger v Cahalan*, 145 Mich App 811, 818; 378 NW2d 607 (1985).

Those problems are compounded by the fact that the winner of the special election, Biniecki, has evidently already assumed the disputed seat and taken the oath of office, but he is

not a party to either of these actions. Thus, a ruling on the merits of the issues raised here could arguably have due-process implications as to Biniecki. See *Gildemeister*, 212 Mich at 302-303 ("[T]he title of these men to office is involved, and yet in this proceeding, which is vital to their interests, they are not made parties, and have 'no day in court.' "). And in any event, as things currently stand, such a merits ruling from this Court would arguably be binding on neither the public nor Biniecki. See *Vrooman v Michie*, 69 Mich 42, 45; 36 NW 749 (1888) (holding that a statute permitting private relators to pursue an action in quo warranto—under limited circumstances—had been "designed to allow the courts to permit suits to determine private rights of relators on a proper showing, without bringing in the representative of the public, *and therefore without binding the public by the judgment*") (emphasis added).

Moreover, to the extent that the parties asked for *injunctive* relief to prevent the special election entirely or to alter the candidates who were certified on the ballot, those requests were improper because "[m]andamus is the appropriate remedy for a party seeking to compel action by election officials." *Attorney General v Bd of State Canvassers*, 318 Mich App 242, 248; 896 NW2d 485 (2016).

Had we construed the parties' requests for injunctive relief concerning the election as miscaptioned requests for mandamus relief, a new problem would have arisen. In short, the party seeking to preclude the election, Brant, failed to name the proper party defendants to obtain mandamus relief concerning it. The "election officials" that would be involved in certifying the candidates for inclusion on the ballot for a county-level election like this, and in the canvassing process, would be not the Board of County Commissioners or the County itself, but the County Clerk and Board of County Canvassers—neither of which were named parties in either of these actions. See MCL 46.411; MCL 168.24a(1). Hence, an injunction like the one requested by Brant in his complaint below—i.e., one that would have "enjoin[ed] Defendant [i.e., the Board] from moving forward with . . . the special general election scheduled for November 4, 2025"—would have been a legal nullity. Although the Board is charged with the legal responsibility for *calling* a special election to fill a vacancy like the one allegedly at issue in this case, see MCL 46.413(1), the Board is not the entity that *conducts* such an election.

D. ISSUES THAT ARE—AND ARE NOT—PROPERLY RESOLVED AT THIS TIME

Despite those problems, not all of the issues currently before this Court defy appellate review entirely. While we cannot now rule on the question at the heart of this dispute—i.e., whether Brant currently holds the disputed seat—because that question may only be resolved via a properly instituted action for quo warranto, there are a few discrete issues we can properly resolve at this time. For the reasons discussed above, we conclude as follows:

First, the trial court erred when it purported to rule on whether Brant still held the disputed seat because the parties did not bring a quo warranto action.

Second, the trial court was correct when it declined to grant Brant's request for an injunction precluding the disputed special election. Brant failed to seek a writ of mandamus, the proper remedy for that claim, and Brant failed to name the proper election officials as parties in his complaint below. Thus, the requested injunction would have been a legal nullity.

Third, the trial court erred when it granted Brant a declaratory judgment that his incarceration in another state did *not* act to vacate his seat because the trial court did not address or decide potentially dispositive legal issues raised by the parties below. Specifically, the trial court neither addressed nor decided cross-appellants' argument that Brant's incarceration in another state resulted in a vacancy of his seat, automatically by operation of law, under MCL 46.411 ("A candidate for the office of county commissioner must be a resident and registered voter of the district that he or she seeks to represent *and must remain a resident and registered voter to hold his or her office*, if elected.") (emphasis added). Nor did the trial court address or decide Brant's contrary argument that, despite MCL 46.412's provisions permitting the Board to fill certain vacancies "by appointment" and MCL 46.413's provisions requiring the Board to instead call a special election under certain circumstances, the Board lacked any authority to unilaterally declare that a vacancy existed and was instead required to seek a judicial determination in that regard.

Because those issues were raised by the parties below, they both would ordinarily be preserved for appellate review, despite the trial court's failure to actually rule on them. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020). Under the current circumstances, however, we are unable to rule on the question of whether Brant's incarceration in another state resulted in a vacancy of his seat because that question bears directly on who currently holds the disputed seat and, as such, can be decided only in a properly instituted action for quo warranto. See *Hartingh v Iosco Circuit Judge*, 210 Mich 568, 570; 177 NW 982 (1920) ("If the office were vacant and no one was claiming it, we might determine the question on mandamus; but, there being a de facto incumbent discharging the duties of the office, we think the situation presented is one which should be determined by quo warranto proceedings."). Similarly, on the record now before us, it would be improper to address the question of whether the Board had authority to declare that a vacancy existed—or was instead required to seek a judicial determination in that regard—because, in the wake of the special election and Biniecki's assumption of the disputed seat, that question must also be resolved via quo warranto. See *id*.; *Lake v North Branch Twp*, 314 Mich 140, 143-144; 22 NW2d 248 (1946).

III. CONCLUSION

For the reasons explained above, we vacate the trial court's September 12, 2025 order in these two actions and remand for further proceedings consistent with this opinion.

As to the precise manner in which the proceedings on remand may unfold, our ability to provide further guidance at this juncture is limited by "the principle of party presentation, which means that in both civil and criminal cases, in the first instance and on appeal, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *In re Knight*, 333 Mich App 681, 691; 963 NW2d 676 (2020) (quotation marks, citations, and ellipsis omitted).

The procedural flaws in these cases are a direct result of the parties' failures to properly plead and argue their claims—and to name the proper party defendants—in the trial court. It is true that we can conceive of various procedural approaches the parties might take on remand to attempt to remedy those mistakes, and perhaps even additional claims and defenses that might be asserted. But like the trial court, it is not this Court's role to act as an advocate for the litigants

before it, see *id.*, nor to serve as their research assistant, see *Platt Convenience, Inc v City of Ann Arbor*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 359013); slip op at 20. Put differently, the manner in which these cases unfold on remand is necessarily a matter to be determined by the parties and their counsel, not one to be dictated by this Court. Especially in an election-related dispute like this one, we are unwilling to risk placing a judicial thumb on the scale, even if inadvertently, by suggesting any particular course of action to the parties.

In both dockets, the order appealed is vacated and these cases are remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs are awarded, with no party having prevailed in full and questions of public interest being involved.

/s/ Kathleen A. Feeney
/s/ James Robert Redford
/s/ Philip P. Mariani